Vaughn KELLER and Jeanne Keller,
Appellants (Defendants),

v.

Clifford D. BRANTON and Ruth B.
Branton, Appellees (Plaintiffs).

No. 83–49.

Supreme Court of Wyoming.

July 26, 1983.

Stephen H. Kline, Cheyenne, for appellants.

Wallace L. Stock, of Loomis, Lazear, Wilson & Pickett, Cheyenne, for appellees.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

Appellees brought an action to enforce residential protective covenants. The trial court determined that the protective covenants were valid, that appellants were subject to them, that appellants had knowledge of the covenants and notice of their violation prior to completing construction, that appellants had violated the covenants as contended by appellees, and that appellees had standing to bring suit to enforce the protective covenants. The court then

ordered the removal of a front yard fence, payment of $300 to correct a drainage problem and awarded attorneys' fees.

Appellants do not appeal the trial court's finding that they were in technical violation of the protective covenants, but rather the court's findings that they were not excused from these violations because of the action or inaction of appellees.

According to appellants, the issues before us are whether a suit to enjoin construction must be commenced prior to completion of the construction, whether appellees themselves were in violation of the protective covenants, whether appellees had waived the right to enforce the covenants, and whether the attorneys' fees were proper.

We will affirm.

Appellants and appellees are next door neighbors in a subdivision subject to protective covenants. Both parties acquired their homes in the forepart of 1981. Later, appellants constructed a carport and front yard chain link fence. The construction of the carport caused a drainage problem for appellees. Appellees sued appellants for violation of the protective covenants and prayed that the court order the removal of the carport and the front yard fence, that the drainage problem be corrected and that attorneys' fees be awarded.

## I

Appellants contend that the protective covenants required that a suit to enjoin construction must be commenced prior to completion of the wrongful construction, or the covenants should be deemed to be fully complied with. Appellants say that since no action was brought to enjoin construction of the fence or carport prior to completion of the construction, no actionable violation of the covenants occurred.

Section II, paragraph 1, of the protective covenants provides:

"1. *Architectural Control:* No building shall be erected, placed or altered on any lot until the construction plans and specifications and a plan showing the location of the structure have been approved by the architectural control committee ***. No fence or wall shall be erected, placed or altered on any lot nearer to any street than the minimum building set-back line. There shall be no front yard fencing. Approval shall be as provided in paragraph 13."

Paragraph 13 provides:

"*Procedure:* The committee's approval or disapproval as required in these covenants shall be in writing. In the event the committee, or its designated representative, fails to approve within 30 days after plans and specifications have been submitted to it, or in any event, if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the related covenants shall be deemed to have been fully complied with."

The trial court held that Section II, paragraphs 1 and 13, of the protective covenants relate to the original house construction and not to subsequent remodeling, and that paragraphs 1 and 13 did not apply to the construction of the carport and front yard fence. The court further determined that there was no evidence that plans and specifications had been presented to the Architectural Control Committee for approval, and therefore appellants could not rely on paragraph 13 to justify the building of the carport and front yard fence.

▮　Although the trial court found that the carport was wrongfully constructed, appellants, for equitable reasons, were not required to remove it. The court disposed of this matter in a sensible way. It determined that the cost of constructing the carport and the cost of its removal outweighed the harm resulting to appellees.

▮　We agree with the result reached by the trial court. Appellants' contention regarding paragraph 13 does not apply to construction of the front yard fence because such fence is prohibited by the terms of Section II, paragraph 1: "There shall be no front yard fencing." There is no provision in the covenants for acquiescence in construction that is prohibited. Paragraph 13

is only operative when the Architectural Control Committee may approve a deviation from the restrictions. Thus, appellants cannot complain if no suit was commenced until construction of the fence was completed.

■ Interference with drainage is prohibited by Section II, paragraph 2, of the protective covenants. Section II, paragraph 13, obviously is not applicable to a drainage problem, and there is no provision in the protective covenants for acquiescence in this type of violation either. Accordingly, we must reject appellants' first contention.[1]

## II

Appellants assert that appellees should be denied the equitable relief prayed for because they themselves are in violation of the same protective covenants. Appellants, however, are in a poor position to appeal to the equitable powers of the court. Within a day of the time appellants commenced the construction of the fence and carport, an attorney at the request of appellees notified appellants that they were in violation of the protective covenants. One of the appellants responded by saying that she did not care what the covenants said and that "hell would freeze over before she would remove her fence."

Appellants, nonetheless, assert as a defense the "clean hands" doctrine.

"The clean hands doctrine is based upon the maxim of equity that he who comes into equity must come with clean hands. It provides in substance that no person can obtain affirmative relief in equity with respect to a transaction in which he has, himself, been guilty of inequitable conduct. [Citation.]" *Fuqua v. Hanson,* 222 Kan. 653, 567 P.2d 862 (1977)

■ Appellees do not disagree with the "clean hands" doctrine but claim they are not in violation of the protective covenants.

Appellants argue that appellees have a fence on the east side of their house, a foot and one-half from the sidewalk, and that a fence is a structure prohibited by Section I, paragraph 3, of the protective covenants. Section I, paragraph 3(C), supra, provides: "No structure shall be located closer than three feet from the side lot lines." In the broadest sense, a fence may be said to be a structure because it was constructed; however, in the context of the covenants a fence cannot be said to be a structure. Also, all the testimony is to the contrary. Paul H. Gertsch, the construction supervisor, testified that Section I, paragraph 3, refers to residential structures and that a fence is "by no means a residential structure," and is not "encroaching on the side building line." Peter J. Hutchison, Engineer and Land Surveyor, testified that in the context of Section I, paragraph 3(C), a fence is not considered a structure. Furthermore, a side yard fence is not prohibited by the covenants as is a front yard fence.

■ Appellants also claim that appellees violated Section II, paragraph 1, of the protective covenants, which states that "no fence or wall shall be erected, placed or altered on any lot nearer to any street than the minimum building set back line." Mr. John A. Steil, a land surveyor, testified that the policy in the City of Cheyenne is that yards on a corner lot consist of certain set-back lines, in this case approximately 25 feet. Since the wooden fence on the east side of appellees' property is nearer to the street than 25 feet, appellants argue that appellees are in violation of Section II, paragraph 1.

Considering Mr. Steil's testimony, appellees may have violated a city zoning ordinance; however, city ordinances are not at issue here. In any event, William A. Thomas, City Zoning Officer of the City of Cheyenne, Wyoming, testified that with regard to the minimum building set-back line, appellees were in compliance with the city ordinance and the covenants in issue. Mr.

---

1. The trial court made no finding whether or not appellees commenced their action to enjoin construction before appellants completed their fence or carport. This determination was not necessary in view of its ruling.

Hutchison testified that Section I, paragraph 2 (apparently the witness was referring to Section II, paragraph 1), did not apply to the east side of appellees' property facing Hays Avenue, but that Section I, paragraph 3, applied, and appellees were not in violation of the covenants.

■ Appellants assert that appellees are in violation of Section II, paragraph 5, because their trailer is parked in their side yard, and in violation of Section II, paragraph 11(A), regarding planting a lawn. However, the evidence is that neither section was violated. First, there was testimony that the trailer was parked in the back yard. Also, appellees testified that seed had not been planted in this specific area because of interference by appellants.

Finally, appellants raise the issue of appellees' violation of Section II, paragraph 10, regarding sight distance at intersections, but presented no evidence to support the allegation. However, Mr. Hutchison testified that appellees were not in violation of this provision of the covenants.

We find that the record is sufficient to sustain the trial court's finding that appellants failed to prove that appellees had violated the covenants, and that appellants had deliberately violated the covenants in a substantial manner.

### III

Appellants assert that appellees waived the right to enforce the alleged covenant violations by their acquiescence in and failure to object to similar violations by other residents of the subdivision.

■ In appellants' third assignment of error they urge that the doctrine of laches should prevent appellees from obtaining the injunctive relief prayed for and awarded by the court, that is, the removal of the front yard fence. In determining what constitutes a waiver of a protective covenant, laches or estoppel, each case must stand on its own facts. *Papanikolas Brothers Enterprises v. Sugarhouse Shopping Center Associates,* Utah, 535 P.2d 1256 (1975). Whether acquiescence in the violation of restrictions

will defeat a right to equitable relief also depends upon the circumstances of each case. Frequent violations of covenants by property owners have been found to constitute justification for courts to refuse to enforce the same covenants against other violators. *Riley v. Stoves,* 22 Ariz.App. 223, 526 P.2d 747, 68 A.L.R.Fed. 1229 (1974).

According to the testimony there were 157 lots in the subdivision, and approximately 120 to 130 homes had been built at the time of trial. Twenty of these homes had some kind of front yard fence. There was evidence that the structures denominated fences were decorative structures and were really not fences in the ordinary sense, that is, indicating boundaries or holding something in or out.

■ To warrant a refusal of equitable relief against breaches of a protective covenant, the breaches acquiesced in must ordinarily be so great, or so fundamental or radical as to neutralize the benefits of the restriction to the point of defeating the purpose of the covenant. In other words, the violations must be so substantial as to support a finding that the usefulness of the covenant has been destroyed, or that the covenant has become valueless and onerous to the property owners. *Riley v. Stoves,* supra. Furthermore, "[f]or a change in neighborhood to justify termination of an equitable servitude, such change must be of a radical and permanent nature." 7 Thompson on Real Property, § 3174 (Bobbs-Merrill Company, Inc. (1962)). Finally, "[t]he burden of proving such a change in the neighborhood is on the party attacking the restrictive covenant." *Moore v. McDaniel,* 48 Ill.App.3d 152, 5 Ill.Dec. 911, 362 N.E.2d 382 (1977).

■ Thus, in order to prove that the general scheme has been abandoned, it must be shown that the plan has been violated to such an extent as would reasonably lead to the conclusion that it has been abandoned. Where a violation is immaterial, minor, unoffensive, or remote from the land, no acquiescence will be presumed. 7 Thompson on Real Property, supra, § 3173.

The failure of a property owner to take action for violations that do not affect him does not constitute waiver by the individual owner. 7 Thompson on Real Property, supra, § 3175. In order for appellants to prevail under the theory of "change of neighborhood" it is necessary for them to develop the circumstances that would warrant its application. *Kindler v. Anderson*, Wyo., 433 P.2d 268 (1967). The trial court found that appellants failed to prove by a preponderance of the evidence that appellees had acquiesced in the building of any of the front yard fences. We agree with the court's determination that appellants failed in their burden of proof.

## IV

Section II, paragraph 15, of the protective covenants provides for the recovery for attorneys' fees which arise from an action to enforce any of the covenants. Appellants raise the issue of the propriety of attorneys' fees, asserting that they were unjustified because appellants were not in violation of the covenants and that therefore an action was not necessary to enforce the covenants. Because of our determination that appellants were in violation of the covenants and that there had been no waiver, estoppel or acquiescence in the violation by appellees, the action to enforce the covenants was justified. The basis for appellants' objection to attorneys' fees has been decided adversely to them. Since appellants raise no objection regarding reasonableness of the amount of the attorneys' fees, we affirm the trial court on this issue.

Affirmed.