2010 WY 24

**GASSTOP TWO, LLC, Appellant (Plaintiff),**

v.

**SEATWO, LLC, and Lawrence N. Small and Jill Small, Appellees (Defendants).**

No. S–09–0052.

Supreme Court of Wyoming.

March 4, 2010.

---

Representing Appellant: Thomas E. Lubnau II and Ryan W. McGrath of Lubnau Law Office, Gillette, Wyoming. Argument by Mr. Lubnau.

Representing Appellees: Rex O. Arney and Orintha E. Karns, of Brown, Drew & Massey, LLP, Casper, Wyoming. Argument by Ms. Karns.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶1] Gasstop Two, LLC (Gasstop) challenges the Judgment and Order of the district court. One of the principal owners of Gasstop was Joel Kurtenbach (Kurtenbach). After a trial to the court sitting without a jury, Gasstop prevailed and the district court awarded a judgment to Gasstop in the amount of $236,672.12. The judgment was against Seatwo, LLC (Seatwo). However, Seatwo was essentially insolvent and the district court dismissed Gasstop's claims against Lawrence N. Small and Jill A. Small (Smalls). Gasstop asserted that the district court should have "pierced the LLC veil" so as to make the Smalls liable for the judgment. Kurtenbach and the Smalls had had previous business dealings that had been successful. In June of 2000, they entered into another separate agreement whereby Gasstop would build and operate a convenience store in a location along a major highway that runs south from Gillette to Douglas. Seatwo agreed to lease space from Gasstop to operate a Burger King franchise at that location. This appeal is concerned with only the specific transaction described above, although the course of dealings between these parties plays some role in the resolution of this case. The essence of Gasstop's appeal is that the district court erred in denying Gasstop's demand that the "LLC veil" be pierced so that the Smalls could be held personally liable for the judgment against Seatwo. We will affirm.

## ISSUES

[¶2] Gasstop raises these issues:

A. The district court erred by refusing to hold Small personally liable for the rent due to Gasstop when Small signed the lease on June 2, 2000, purportedly on behalf of Seatwo, a company which was not formed or organized until August 17, 2000.

B. The district court erred by considering factors for piercing the company veil of Seatwo, which are not relevant to piercing the company veil and by failing to consider factors which are relevant under Wyoming law.

C. The district court erred when it misstated the undercapitalization factor in Wyoming and failed to properly apply it to the facts of this case.

D. Even if the district court considered the appropriate factors in LLC piercing, its findings of fact are clearly erroneous.

Seatwo and Small raise these issues in response:

A. In the trial court, Gasstop failed to raise the argument that Small was personally liable as a promoter who signed a pre-incorporation lease, and, therefore, is now foreclosed from raising this issue.

B. The district court applied the correct factors to determine that the Seatwo veil could not be pierced.

C. The district court correctly stated and applied the undercapitalization factor to the facts of this case.

D. The district court's findings of fact are not clearly erroneous.

In its reply brief, Gasstop contends:

A. Gasstop should not be foreclosed from asserting that Small is personally liable to Gasstop on the theory of promoter liability.

1. Promoter liability is not a fact-specific inquiry as argued by Small and Seatwo when the pre-incorporation or organization agreement is in writing and the writing is clear and unambiguous.

B. Gasstop is not asking this court to implement a bright line rule with regard to undercapitalization in the LLC piercing context.

C. If an LLC allegedly passes the test for corporate piercing it does not automatically pass the test for LLC piercing as the tests contain different factors.

## FACTS AND PROCEEDINGS

[¶ 3] This matter was tried to the district court in a one day proceeding. The principals in both Gasstop and Seatwo gave testimony and the district court admitted a substantial number of documentary exhibits during the course of the testimony. After the trial was completed, the parties submitted written arguments which the district court utilized in preparing a Decision Letter which was then incorporated into the judgment.

[¶ 4] Kurtenbach is one of the principal owners of Gasstop. On June 2, 2000, Kurtenbach (on behalf of Gasstop) and Lawrence Small (on behalf of Seatwo) entered into a lease agreement to operate the business at issue in this case. Those same parties were involved in other business ventures and intended to collaborate in future additional such business relationships.

[¶ 5] In this particular business relationship, Gasstop was to have a piece of real estate developed and, upon completion of the development, Seatwo was to be a tenant leasing space from Gasstop to operate a Burger King restaurant, which did in fact come to pass. Gasstop contends that Mr. Small signed the lease on June 1, 2000, before Seatwo was formed. The record substantiates that Seatwo was formed on August 17, 2000. Seatwo was capitalized by a $250.00 contribution by Mr. Small, and Mrs. Small and one of the Smalls' children each contributed $125.00, for a total capitalization of $500.00. Gasstop makes much of these "insubstantial" capital contributions in its efforts to pierce the LLC veil, because the lease Small signed obligated Seatwo to make lease payments of just under one million dollars over the term of the lease. Mr. Small obtained a franchise for the Burger King operation in dispute here in his own name, because such a franchise must be held by an individual(s) and not by a business entity. The cost of the franchise was $50,000.00. Gasstop claimed not to be aware of that circumstance and basically assumed the "franchise" was an asset of Seatwo. Seatwo also borrowed $350,000.00 to obtain furniture and equipment for the new Burger King operation, and Seatwo also had a line of credit in the amount of $15,000.00 to pay suppliers. Seatwo never turned a profit and eventually it ceased operations on October 31, 2003. Gasstop first obtained a judgment against Seatwo in an uncontested proceeding in the Campbell County Circuit Court. The instant proceedings were initiated by Gasstop's complaint filed herein on September 9, 2004.

## DISCUSSION

### Standard of Review

[¶ 6] The standard of review we apply where trial is to the court sitting without a jury is this:

The factual findings of a judge are not entitled to the limited review afforded a

jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Harber v. Jensen,* 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo.2004) quoting, *Life Care Centers of America, Inc. v. Dexter,* 2003 WY 38, ¶ 7, 65 P.3d 385, 389 (Wyo.2003). *See also Powder River Ranch, Inc. v. Michelena,* 2005 WY 1, ¶ 8, 103 P.3d 876, 879–80 (Wyo.2005). Further, with regard to the trial court's findings of fact,

[W]e assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Harber,* ¶ 7, 97 P.3d at 60. The district court's conclusions of law are, however, subject to our *de novo* standard of review. *Powder River Ranch,* ¶ 8, 103 P.3d at 879–80; *Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.,* 2003 WY 139, ¶ 6, 78 P.3d 679, 680–81 (Wyo.2003).

*Mullinnix LLC v. HKB Royalty Trust,* 2006 WY 14, ¶ 12, 126 P.3d 909, 916 (Wyo.2006).

## Was Small a "Promoter" Who Can Be Held Liable Personally

 [¶ 7] The lease Kurtenbach and Small executed on June 1, 2000, specified that the agreement was between Gasstop and Seatwo and each signed the lease as representatives of those entities. Gasstop contends that Small was a "promoter" at that point in time because Seatwo did not come

into being until August 17, 2000. This issue was not called to the attention of the district court at the proceedings below, and the district court made no findings or rulings in that regard. We have held:

This Court does not review issues that were not properly developed below.

We have stated that " '[w]e strongly adhere to the rule forbidding us to "consider for the first time on appeal issues that were neither raised in, nor argued to, the trial court," except for those issues which are jurisdictional or are fundamental in nature.' " *Hronek v. St. Joseph's Children's Home,* 866 P.2d 1305, 1309 (Wyo.1994) (quoting *Bredthauer v. TSP,* 864 P.2d 442, 446–47 (Wyo.1993) and *Oatts v. Jorgenson,* 821 P.2d 108, 111 (Wyo.1991)). " 'We follow this rule because "it is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court." ' " *Hronek,* 866 P.2d at 1309 (quoting *Bredthauer,* 864 P.2d at 446–47 and *Oatts,* 821 P.2d at 111); see also 5 Am.Jur.2d *Appellate Review* § 690 (1995). "We of course must not judge the matter of abuse of discretion on the basis of showings made to us on appeal. We must judge on the basis of showings made to the trial court...." *Holly Sugar Corp. v. Perez,* 508 P.2d 595, 599 (Wyo.1973). We have articulated and followed this principle on numerous occasions [Citations omitted.].

*Yates v. Yates,* 2003 WY 161, ¶ 13, 81 P.3d 184 (Wyo.2003). Amoco does not contend that this issue is either jurisdictional or fundamental. This Court does not consider the imposition of penalties under the circumstances of this case to be so fundamental as to require our review when Amoco failed to present its current argument against the imposition of such penalties before the Board.

*Amoco Production Co. v. Department of Revenue, State of Wyo.,* 2004 WY 89, ¶ 53, 94 P.3d 430, 449 (Wyo.2004).

 [¶ 8] We will apply that rule here because the issue was not raised below. Our

decision to do so is fortified by the testimony of Messrs. Kurtenbach and Small that described the course of dealings between them and their business entities. In context, the discrepancy complained of could not have served to prejudice Kurtenbach or Gasstop, nor has any suggestion been made by Gasstop that a jurisdictional or fundamental error is in play here.

**Piercing the LLC Veil**

 [¶ 9] Limited Liability Companies are creatures of statute. §§ 17–15–101 through 17–15–147. It is evident from the district court's decision letter that its judgment was guided by our decision in *Kaycee Land and Livestock v. Flahive*, 2002 WY 73, 46 P.3d 323 (Wyo.2002) and the authorities cited therein. Also see *Rivermeadows, Inc. v. Zwaanshoek Holding*, 761 P.2d 662, 666–67 (Wyo.1988); Phillip L. Jelsma and Pamela Everett Nollkamper (Phillip P. Whynott), *The Limited Liability Company*, §§ 11–130 and 11–140 (2009) (noting that every state that has enacted LLC piercing legislation has chosen to follow corporate law standards and not develop a separate LLC standard); David M. Hastings, Annotation, *Construction and Application of Limited Liability Company Acts*, 79 A.L.R. 5th 689, § 5 (limited liability company acts interpreted as analogous to business corporation law) (2000 and Supp. 2008). We also take note here that the Whynott treatise notes that,

> The LLC veil piercing factors used from the corporate arena can be reduced to four categories:
>
> 1. Fraud;
>
> 2. Inadequate capitalization;
>
> 3. Failure to observe company formalities; and
>
> 4. Intermingling the business and finances of the company and the member to such an extent that there is no distinction between them[.]

*Id.*, at § 11:130. We are satisfied from the discussion we have set out above, as well as from a very similar discussion set down in the district court's decision letter, that the district court faithfully applied the correct law to the factual disputes that arose in this case. Gasstop contends that the district court failed to consider factors "relevant" in the LLC context, and also considered factors from the corporate context that are not relevant to an LLC. Our review of the more persuasive authorities counsels us to reject this contention.

[¶ 10] The district court made detailed findings of fact as to the damages claimed by Gasstop. However, we will not set them out in detail because the amount of the damages is not contested by Seatwo or Small. It suffices to note that Gasstop asserted the damages owed by Seatwo and/or Small totaled $236,672.12. It also suffices to note that the district court found that Seatwo breached the lease/contract and that Gasstop was damaged in the amount set out above. The real issue was who was to pay any such damages, Seatwo or the Smalls.

 [¶ 11] Having ascertained the damages at issue, the district court proceeded to address the issue of piercing the LLC veil—i.e., whether or not to hold the Smalls liable for the damages rather than the defunct Seatwo, LLC. The district court set out the law applicable to that issue, and it was in all respects consistent with the law we have summarized above. After having done so, the district court reached these conclusions about the factors that go into a consideration of whether the piercing of the LLC veil is permissible:

a. *Undercapitalization*—Evidence was presented that the Smalls had operated other Burger King business ventures successfully. The failure of [the instant] business was not due to the undercapitalization, but was rather due to the poor location, lack of customers and poor traffic count. The testimony showed that the issue of capitalization was not the reason for the loss of money for both parties in the business, but rather the lack of the success of the business. At no time did the testimony purport to show that the lack of capital was a reason for the failure of the business or the inability to pay rent. Rather, the business operated for approximately two years at a loss and was still, although struggling,

making the rental payments. Regardless, undercapitalization by itself is not grounds to pierce an LLC veil. Where all corporate formalities were followed, undercapitalization was not the only pertinent factor to be considered in piercing the corporate veil. *Amfac Mechanical Supply Co. v. Federer,* 645 P.2d 73, 82 (Wyo.1982) (citing *Fisser v. International Bank,* 282 F.2d 231, 240 (2nd Cir.1960) (footnote omitted)).

b. *The Smalls as the Holders of the Franchise*—As the testimony indicated, Burger King required individuals to hold the franchise in their own names; the LLC could not hold the franchise. The Smalls used the franchise consistent with the needs and organization of SEATWO, and received no benefit when they lost the franchise. The Smalls never received any compensation when Burger King withdrew the franchise because the business was no longer able to operate. The franchise was fixed to the location. Therefore, the argument that the franchise was an asset that should have been in SEATWO for the benefit of creditors is unpersuasive. There was no evidence presented at trial that the Smalls, in any way, were commingling funds or misusing the franchise, but rather it was for the sole purpose of the operation of the restaurant by SEATWO. The Court finds the evidence of holding the franchise in their own names was not sufficient to show a lack of conformity to the formalities of operating an LLC. Although there was question about the terms in the lease stating the tenants needed to hold the franchise, this language is not a persuasive argument when it was impossible for SEATWO to actually hold the franchise.

c. *Furniture Fixtures and Equipment*—All testimony regarding these items showed that First Interstate Bank had a prior lien on any equipment, and the Court finds that SEATWO made good faith efforts in liquidating the equipment, but were unable to do so. SEATWO was forced to donate the equipment for a tax credit for SEATWO. The testimony indicated the bank knew that Mr. and Mrs. Small were trying to sell the equipment on behalf of SEATWO in an effort to liquidate damages, but were unsuccessful. These actions were approved by the bank, and were within the capacity of the members of SEATWO in trying to satisfy the first priority creditor.

d. *The Company was used as an Alter Ego and to Defraud*—There is no indication that the company, SEATWO, was used to defraud anyone, or that it was simply being used as an alter ego for the personal business ventures of Mr. and Mrs. Small. The Wyoming Supreme Court has addressed the piercing of a corporate veil under the "alter ego" or the non-existence of an actual separate entity issue. This Court will follow their [holding]. When "there is such a unity of interest and ownership that the individuality, or separateness, of [such] person and corporation has ceased; [and] that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice" then the veil may be pierced. *Jackson Hole Traders, Inc. v. Joseph,* 931 P.2d 244, 251 (Wyo. 1997) (citing *Minifie v. Rowley,* 187 Cal. 481, 202 P. 673, 676 (1921) (other citations omitted)). The evidence did not support an assertion that SEATWO was an alter ego for the Smalls. Quite the contrary, the Smalls had used a legal business entity as a liability shield. SEATWO entered into a contract with GASSTOP to further a business objective of operating a Burger King on property owned by GASSTOP. The testimony showed that the same owners of these two entities had done business together before in substantially the same manner, and it had been profitable. The Smalls used SEATWO as an operating and accounting business for the Burger King restaurant. They followed the formalities

required and were not attempting to sanction a fraud or promote injustice. To the contrary, both entities were entering into a business agreement in an effort to [perpetuate] a profitable business to benefit both parties. Testimony indicated that SEATWO kept separate accounting statements, filed all proper paperwork with the Secretary of State, filed separate tax returns, only made small contributions to the Smalls on two occasions as employees of the business entity SEATWO, and followed all relevant formalities under the law.

The Smalls operated SEATWO in substantial conformity with the rules set forth to operate an LLC. They kept all personal and business assets separate. They filed the appropriate paperwork with the Secretary of State, and operated as a prudent LLC. This Court finds no evidence to pierce the LLC veil.

## CONCLUSION

[¶ 12] We conclude that none of the district court's findings of fact were clearly erroneous and that the district court correctly applied the applicable law. Thus, we affirm the district court's judgment.