2010 WY 158

Peter B. STEIGER and Sylvia Steiger, Appellants (Defendants),

v.

HAPPY VALLEY HOMEOWNERS ASSOCIATION, Appellee (Plaintiff).

Nos. S–07–0260, S–09–0081.

Supreme Court of Wyoming.

Dec. 7, 2010.

Representing Appellants: Peter B. Steiger and Sylvia Steiger, pro se.

Representing Appellee: William D. Bagley of Frontier Law Center, Cheyenne, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] Peter B. and Sylvia Steiger (the Steigers) owned a tract of land in a subdivision governed by restrictive covenants. The Happy Valley Homeowners Association (the Association) filed a complaint against them alleging that they were violating one of the covenants. The district court granted summary judgment for the Association and the Steigers appealed. This Court reversed the summary judgment and remanded the case to the district court after concluding that by failing to timely respond to a request for

* Chief Justice at time of expedited conference.

admission, the Association was deemed to have admitted it lacked the authority to bring the legal action. *Steiger v. Happy Valley Homeowners Ass'n,* 2007 WY 5, 149 P.3d 735 (Wyo.2007) (*Steiger I* ).

[¶ 2] On remand, the district court entered an order allowing the Association to withdraw the admission and submit a response. The district court also entered an order awarding the Steigers costs for the appeal in *Steiger I.* The Steigers appealed both orders to this Court. We dismissed the appeal from the order allowing withdrawal of the admission as an improper interlocutory appeal. We stayed the appeal from the order awarding costs because a trial had been held in the interim and another appeal from the district court judgment seemed likely. As anticipated, the Steigers appealed the district court's judgment enforcing the covenant and dismissing their counterclaims. We affirm the district court order and judgment.

## ISSUES

[¶ 3] The Steigers, appearing *pro se* as they have throughout these proceedings, present four issues which we rephrase as follows:

    1. Whether the district court erred in allowing the Association to withdraw its admission and respond to the discovery request.

    2. Whether the district court's findings were supported by the evidence.

    3. Whether the district court was prejudiced or biased against them or unfairly failed to require the Association to comply with the Wyoming Rules of Civil Procedure.

## FACTS AND PROCEEDINGS

[¶ 4] Happy Valley is a subdivision located along Happy Jack Road west of Cheyenne. The subdivision is governed by restrictive covenants recorded in 1977. In 2000, the Steigers purchased a tract of land in Happy Valley. They placed a mobile home on the lot which, by their own admission, did not have a permanent foundation. In 2004, the Association filed a complaint alleging the Steigers were in violation of a covenant prohibiting homeowners in Happy Valley from occupying a modular or mobile home without a permanent foundation. The Steigers denied the Association's claims and filed a counterclaim seeking judgment in their favor finding that the Association had not duly authorized the legal action filed against them and the Association, by its failure to enforce other violations, had waived any right to enforce the covenants.

[¶ 5] In discovery, the Steigers served the Association with eighty-eight requests for admission, one of which asked the Association to admit that it was not legally constituted and the action it filed against them was invalid. The Association did not respond to the requests for admission within thirty days as required by W.R.C.P. 36. The Association filed its responses the following week and then filed a motion for summary judgment. Concluding there were no genuine issues of material fact, the district court found the Steigers had violated the covenant and granted the motion. In the Steigers' first appeal to this Court, we held the Association was deemed to have admitted that it did not have the authority to bring the action and reversed the summary judgment order. *Steiger I,* ¶ 4, 149 P.3d at 736.

[¶ 6] On remand to the district court, the Steigers sought payment of the costs they incurred in *Steiger I.* The district court entered an order awarding costs. The Association filed a motion for an order allowing it to withdraw its admissions and serve responses to the requests for admission. The Steigers objected and, after a hearing, the district court granted the motion. The Association then filed a response to the request for admission denying that it was not legally constituted and the legal action filed against the Steigers was invalid.

[¶ 7] The Steigers appealed both the order awarding costs and the order allowing the Association to withdraw the deemed admissions. Meanwhile, the district court scheduled the remaining matters for trial. At the conclusion of the trial, the district court issued oral findings and a written judgment in which it concluded the Steigers took title of their tract subject to the covenants, the covenants had not been abandoned, the Steigers

were in violation of the covenants because their mobile home was not on a permanent foundation, the Association was duly authorized to bring the action against the Steigers, and the Steigers failed to meet their burden of proving their claim that the covenants had been abandoned. The district court dismissed the Steigers' counterclaims with prejudice, restrained them from further violation of the covenants and enjoined them from occupying their home until they brought it into compliance with the covenants. The Steigers appealed the judgment to this Court.

## DISCUSSION

### 1. Order Allowing Withdrawal of Admissions

[¶ 8] The Steigers contend the Association should not have been allowed to withdraw its admissions and file responses. They assert the Association did not request an order allowing withdrawal for over two years and then did so after this Court held in *Steiger I* that the admission was conclusively established. They contend the district court's order allowing the Association to withdraw the admissions violated W.R.C.P. 6(b), which allows a court to enlarge the time for filing motions only when the request is made before the time expires or, when a motion is made after the time has expired, upon a showing of excusable neglect. Because the Association did not request an order allowing it to withdraw the admissions before the time for responding expired and did not show excusable neglect for its late request, the Steigers maintain the district court did not have the authority to allow the withdrawal. The Steigers further assert this Court's ruling in *Steiger I* that the admissions were conclusively established prevented the district court from reopening the issue by allowing the Association to withdraw the admissions. They argue *Hodges v. Lewis & Lewis, Inc.*, 2005 WY 134, 121 P.3d 138 (Wyo. 2005), the case the Association relied upon in requesting the withdrawal, does not support allowing the withdrawal in this case because

the party seeking the withdrawal in *Hodges* acted promptly and not, as in this case, over two years later and after an appeal.

[¶ 9] District courts have broad discretion to manage pretrial discovery matters. *Id.*, ¶ 11, 121 P.3d at 142. Therefore, we review a district court's decision on a motion to withdraw or amend admissions under W.R.C.P. 36(b) for abuse of discretion. *Id.* An abuse of discretion occurs when a court acts in a manner which exceeds the bounds of reason under the circumstances. *Id.*, ¶ 11, 121 P.3d at 143. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. *Id.*

[¶ 10] W.R.C.P. 36(a), governing requests for admission, provides in pertinent part as follows:

(a) *Request for admission.*—A party may serve upon any other party a written request for the admission ... of the truth of any matters within the scope of Rule 26(b) [1]....

The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter....

(b) *Effect of admission.*—Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.... [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

(Footnote added.)

[¶ 11] The Steigers served their request for admissions on August 19, 2004. The

---

1. W.R.C.P. 26(b) defines the scope of discovery generally as including "any matter, not privileged, that is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any party ..."

Association did not serve written answers to the requests until September 24, 2004, and there is no indication the district court allowed the Association additional time to serve its answers. Thus, in *Steiger I,* ¶ 4, 149 P.3d at 736, this Court held,

> [T]he [Association] has admitted, and it is therefore conclusively established, that any action the Board might have taken to authorize this suit was invalid. Without proper authorization, the [Association] lacked capacity to prosecute the instant suit.

[¶ 12]   On remand to the district court, the Association filed its motion for an order allowing it to withdraw its admissions and serve responses. The motion was filed on March 27, 2007, two and a half years after the Steigers served the request for admissions. In its motion, the Association cited the provision in W.R.C.P. 36(b) allowing the court to permit withdrawal or amendment of admissions and asserted that its original responses to the eighty-eight requests for admission, which it served within a week after the thirty day time period, were late because of the volume of the Steigers' discovery requests. After considering the parties' respective arguments, the district court granted the motion, allowing the Association to withdraw its admissions and serve responses.

[¶ 13]   The Steigers contend the order allowing the withdrawal is contrary to the authorization in W.R.C.P. 6(b) allowing the district court to enlarge the time prescribed in other rules only when the request is made before expiration of the period prescribed or when the request is made after expiration of the time and excusable neglect is shown for the failure to act within the time prescribed. By permitting the Association to respond to the requests when they did not request more time within the thirty day period or show excusable neglect, the Steigers assert the district court's order effectively enlarging the time for serving responses violated Rule 6.

[¶ 14]   The difficulty with the Steigers' argument is that it requires us to limit the language in Rule 36(b) expressly authorizing the district court to permit withdrawal or amendment of admissions "when the presentation of the merits of the action will be subserved" and "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice" them. Given that Rule 36(b) expressly authorizes the district court to permit withdrawal under specified circumstances, we will not read language from Rule 6 to limit the authority granted under Rule 36(b).

[¶ 15]   The Steigers also contend that *Hodges* does not support the district court's order. In that case, Ms. Hodges served requests asking Lewis to admit that she did not contribute to her personal injuries. Lewis missed the deadline for responding and was deemed to have admitted the request. Prior to trial, the district court allowed Lewis to amend its admissions to deny the request.

[¶ 16]   On appeal, Ms. Hodges claimed the district court erred in allowing the amendment. We applied the two-part test for withdrawing or amending admissions under Rule 36(b) requiring, first, that the moving party show that allowing the withdrawal will promote presentation of the merits of the case and, second, that the objecting party show that withdrawal will prejudice him in maintaining his defense. Addressing the first prong, we said:

> The purpose of Rule 36 is "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial." *Perez v. Miami–Dade County,* 297 F.3d 1255, 1265 (11th Cir.2002) quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2252 (2d ed.1994). The first factor of the Rule 36(b) test emphasizes the importance of having actions resolved on the merits rather than as a result of a technical error. *Raiser* [*v. Utah County*], 409 F.3d [1243] at 1246 [2005]; *Perez,* 297 F.3d at 1266. This requirement [for establishing that withdrawal should be permitted] is satisfied when it is shown that upholding the admissions would practically eliminate any presentation of the merits of the case. *Id.* Thus, there is a distinct preference in the rule for ascertaining the truth and deciding the case on its merits. *Perez,* 297 F.3d at 1266.

*Hodges,* ¶ 12, 121 P.3d at 143. We further quoted the Eleventh Circuit for the following principles:

> When a party uses the rule to establish uncontested facts and to narrow the issues for trial, then the rule functions properly. When a party like Perez, however, uses the rule to harass the other side or, as in this case, with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements (that the party has already denied in its answer), the rule's time-saving function ceases; the rule instead becomes a weapon, dragging out the litigation and wasting valuable resources.

*Id.,* ¶ 13, 121 P.3d at 143, quoting *Perez,* 297 F.3d at 1268.

[¶ 17] Applying the first part of the test in *Hodges,* we concluded that allowing Lewis to amend its response to the request asking it to admit that Ms. Hodges did not contribute to her injuries furthered presentation of the merits of the controversy. *Id.* Noting that Lewis had filed an answer denying Ms. Hodges' claim that it was negligent and expressly alleging that she was more than fifty percent at fault for her injuries, we concluded that allowing the admission to stand essentially would have decided that Lewis breached a duty owed to Ms. Hodges, a key element of her negligence claim, while permitting the parties to present evidence of fault "advanced the search for the truth and promoted a correct legal ruling." *Id.*

[¶ 18] Addressing the second part of the Rule 36(b) test, we said the prejudice contemplated by the rule is not simply that a party who obtained the admission now has to convince the jury of its truth. Rather, the party must show that it will have difficulty proving its case if withdrawal is allowed. We cited as an example a situation where key witnesses are unavailable to testify about the matter initially deemed admitted. We also said the amount of time the party seeking to uphold the admission has relied upon it may be important in determining prejudice. *Id.,* ¶ 14, 121 P.3d at 143.

[¶ 19] Applying the prejudice prong of the rule in *Hodges,* we concluded Ms. Hodges had not shown the required prejudice. We said:

> Allowing Lewis to withdraw its admission simply replaced the burden of proof upon the plaintiff—where, in the pursuit of truth, it belonged. Ms. Hodges did not rely on the admission for a substantial period of time.... Moreover, the district court remedied any prejudice which inured to Ms. Hodges as a result of relying on the admission when it granted her request for a continuance of the trial to allow her additional time to prepare.

*Id.,* ¶ 15, 121 P.3d at 144.

■ [¶ 20] As in *Hodges,* we conclude that allowing the Association to withdraw its admission and serve its response promoted presentation of the merits of the controversy. Denying the motion would have prevented presentation of the case. Allowing the withdrawal simply placed the burden back where it belonged on the Association to prove it was authorized to bring the enforcement action.

■ [¶ 21] The Steigers maintain their case is distinguishable from *Hodges* in that they relied on the admission for two and a half years and the amount of time a party relies on an admission is a key factor in showing prejudice. We said in *Hodges* that the amount of time a party relies on an admission may be an important factor in determining prejudice. Under the facts of this case, however, we are not persuaded that the reliance factor outweighs the preference for deciding a controversy on its merits. Much of the time that passed between the deemed admission and the Association's request to withdraw it resulted from the Steigers' appeal to this Court from the district court's summary judgment order, time that is not attributable to any action or inaction on the Association's part. Within two months of this Court's February 1, 2007, mandate in *Steiger I,* the Association filed its motion to withdraw its admission. The district court ruled on the motion two and a half months before trial and it does not appear from the record that the Steigers sought a continuance of the trial date on the basis that they had relied on the admission and needed

more time to prepare as a result.[2] Even if the Steigers did seek a continuance on those grounds, the record does not indicate any such reliance left them unprepared for trial. To the contrary, the record suggests the Steigers were well prepared for trial and had spent untold hours preparing to defend against the Association's claim. The district court could reasonably have concluded as it did that allowing withdrawal of the admission would further resolution of the controversy on the merits and not prejudice the Steigers. We find no abuse of discretion in the order granting the motion.

### 2. Sufficiency of the Evidence to Support the District Court's Findings

[¶ 22] The Steigers contend the district court's findings were not supported by the evidence presented at trial. The trial held on remand was to the district court sitting without a jury. We, therefore, apply the following standard of review:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Gasstop Two, LLC v. Seatwo, LLC,* 2010 WY 24, ¶ 6, 225 P.3d 1072, 1075 (Wyo.2010).

[¶ 23] The first finding the Steigers assert is not supported by the evidence is the finding that the Association's action was duly authorized by its members. Specifically, the district court found:

7. Based upon the testimony of Mr. Tucker, Mr. Rudy and Ms. Tozier the Court finds this action by the [Association] was duly authorized by its Members, the [Association] was duly authorized by its Members, the [Association] has standing to bring this suit and it is a reasonable response to the refusal of [the Steigers] to comply with the covenants.

[¶ 24] At trial, Tim Rudy testified that an annual meeting of Association members was held in January of 2004. He was president of the Association at the time. He testified that all of the homeowners were notified of the meeting and approximately twenty people attended, including board members and other homeowners. In response to the district court's questioning, he testified the issue of the Steigers' violation was discussed at the meeting and the members were asked to vote on whether to let the violation go or pursue compliance by involving an attorney. Mr. Rudy testified that members were asked to raise their hands if they were in favor of enforcing the covenant against the Steigers. He testified the vote was unanimous in favor of enforcement; to his recollection, no one voted against enforcement. He further testified that the quorum required for annual meetings was ten percent of voting members and he believed more than a tenth of the members attended the January 2004 meeting. To have a quorum, he testified, nine of the ninety-three lot owners would have had to have been present.

[¶ 25] Ross Tucker, who served as president of the Association after 2004, also testified that a quorum was present at the 2004 annual meeting. He testified he did not remember anyone voting in opposition to taking legal action against the Steigers to enforce the covenant. On cross-examination by Ms. Steiger, with the aid of the January 2004 annual meeting minutes, Mr. Tucker testified that thirteen people were present, including three board members. He testified that

---

2. The Steigers did file a motion to vacate the bench trial in part on the grounds that they had appealed to this Court from the orders awarding costs and allowing withdrawal of the admission; therefore, the district court lacked jurisdiction to proceed. The Steigers also asserted the Association had failed to provide them with a copy of its pretrial memorandum, leaving them "unequipped to counter the charges." The motion to vacate does not appear to request a continuance on the basis of reliance.

there are ninety-three lots and ten percent of the lot owners were required for a quorum. Mr. Tucker conceded that if only thirteen people were present, and most of them were husband and wife, that would not constitute a quorum.

[¶ 26] Pat Tozier, vice president of the Association at the time of the January 2004 meeting, testified that she was present at the meeting, there was a quorum, and the members voted to proceed with any legal action necessary to enforce the covenants. The Steigers did not challenge Ms. Tozier's testimony that a quorum was present. Bob Cook, the Association treasurer, testified that members sometimes carry proxies allowing them to cast votes at meetings for members who cannot attend. He testified that he was not present at the January 2004 meeting but had on other occasions carried proxies for three, sometimes four people.

[¶ 27] From this evidence, we are not left with the definite and firm conviction that the district court committed a mistake in finding that legal action against the Steigers was duly authorized by the Association members. Three past or current board members testified that they believed a quorum was present, and the testimony of one of those witnesses went unchallenged. Although the Steigers were able to raise a doubt on cross-examination of Mr. Tucker about whether ten percent of the lot owners were present, we cannot say that doubt was sufficient to overcome the other testimony. In light of the other testimony and the fact that the district court had the opportunity to observe the witnesses and assess their credibility, we are not willing to conclude its finding was clearly erroneous.

[¶ 28] The Steigers also contend the district court's finding that the Association did not abandon the covenants by failing to uniformly enforce them was clearly erroneous. The challenged finding appears in the judgment as follows:

5. The Court, based upon a personal visit to the development finds the assertion by the [Steigers] that the covenants as a whole or in pertinent part have been abandoned or ignored is not supported by the Court's observation of the tracts in the development. While there may be several tracts which do not comply with the covenants in some minor respects, the overwhelming majority of the tracts do comply with the covenants. The Court specifically finds, based upon its personal inspection of the tracts in the development that the violations are insubstantial and fail to support a finding that the usefulness of the covenants has been destroyed or that covenants have become valueless or onerous to property owners. The above cited covenants are reasonable and have not been abandoned or waived and remain entitled to enforcement to restrain violations or to recover damages or both. Based upon the testimony of Ross Tucker, the past and current president of the [Association], the Court accepts as accurate the [Association]'s assertion that it has in the past sought appropriate legal measures to enforce the covenants. For example, the [Association] has forced a homeowner to move a foundation and the [Association] has initiated legal action to collect unpaid or underpaid dues. The court accepts as accurate Mr. Tucker's testimony that there are no other mobile or modular homes in the subdivision which are non-compliant with the covenants.[3]

Contrary to this finding, the Steigers assert that they provided evidence of numerous violations by other lot owners that the Association allowed to go uncorrected, thereby proving the covenants were abandoned.

[¶ 29] A protective covenant is abandoned by failure to enforce it when it is violated, the violations are ignored or acquiesced to, and the violations are "so great,

---

3. As reflected in its findings, the district court, along with the parties, drove to and viewed Happy Valley in the course of the trial. Neither party objected then, nor do they claim on appeal that the viewing was improper. Since neither party raised the issue we do not address it beyond noting that while this Court has held such inspections are within the district court's discretion, *Henderson v. Kirby Ditch Co.*, 373 P.2d 591, 594 (Wyo.1962), we wonder about the viewing in this case and the district court's reliance in its findings on what it observed given that three years had passed since the alleged violations.

or so fundamental or radical as to neutralize the benefits of the restriction to the point of defeating the purpose of the covenant. In other words, the violations must be so substantial as to support a finding that the usefulness of the covenant has been destroyed, or that the covenant has become valueless and onerous to the property owners." *Hammons v. Table Mountain Ranches Owners Ass'n, Inc.*, 2003 WY 85, ¶ 14, 72 P.3d 1153, 1156 (Wyo.2003), quoting *Keller v. Branton*, 667 P.2d 650, 654 (Wyo.1983). The evidence presented in this case does not support the Steigers' contention that the other violations were so substantial that the Association effectively had abandoned the covenants.

[¶ 30] Mr. Rudy testified that during his term as president of the Association, which included 2004, the members voted unanimously to enforce major violations of the covenants. One of those violations involved the Steigers' failure to place their mobile home on a permanent foundation. Mr. Rudy testified that safety was one of the reasons for the covenant requiring a permanent foundation because in one instance high winds blew over a trailer that was not on a permanent foundation. He also testified that the Association wanted permanent homes in the subdivision, not camping trailers and the like that could be moved in and out at any time. He testified that as president of the Association, he was charged with enforcing the covenants. He testified that while he did not nitpick about what he felt were minor violations he tried to address complaints about particular violations. He testified there were other violations and they were taken care of without having to take legal action.

[¶ 31] Mr. Tucker testified that he has lived in Happy Valley since 1995 and has served on the board in one capacity or another since then. He testified that on one occasion he wrote a letter to a resident who built a $5,000 concrete foundation within sixty feet of the property line in violation of the covenants. In response to the letter, she rebuilt the foundation ten feet further away from the property line in compliance with the covenants. He also testified about writing letters to residents about junk piles and having the county notify them they would be charged if they failed to clean them up. He testified that requiring a permanent foundation on homes in Happy Valley enhances the property, protects plumbing and electrical systems and keeps homes from blowing apart in the wind and debris ending up on other people's property. Mr. Tucker also testified that at the January 2004 meeting the discussion was about wanting all residents to comply with the covenants. Ms. Tozier likewise testified that enforcement of the covenants was discussed at the January 2004 meeting, including taking legal action if necessary to do so. She testified that it was the Association president's job to enforce the covenants. She testified that one of the board's priorities was enforcing the covenants and maintaining the neighborhood.

[¶ 32] In an effort to show that the Association abandoned the covenants, the Steigers cross-examined Mr. Rudy, Mr. Tucker and Ms. Tozier concerning instances in which the covenants allegedly were not enforced. In most cases, the witnesses either did not agree that there was a violation or testified that, after notification of the violation, the homeowner had or was attempting to bring the property into compliance. The fact that in some instances the witnesses conceded that a violation occurred and was not acted upon does not leave us with the definite and firm conviction that the district court committed a mistake in finding that the covenants were not abandoned. Given the entirety of the testimony, we do not conclude the district court's finding was clearly erroneous.

### 3. Bias and Prejudice

[¶ 33] The Steigers contend the district court displayed bias and prejudice against them, decided every issue in favor of the Association and required them to comply with the Wyoming Rules of Civil Procedure while not requiring the Association to do so. Prejudice is prejudgment or the forming of an opinion without sufficient knowledge or examination; bias is a leaning of the mind or an inclination toward one person over another. *Reichert v. State*, 2006 WY 62, ¶ 37, 134 P.3d 268, 278 (Wyo.2006). Mere allegations will not suffice to show bias or prejudice; the party alleging a claim of bias or prejudice

must present specific facts showing prejudgment or a leaning of the mind to the extent that the district court's decision was based on grounds other than the evidence before it. *Id.; TZ Land & Cattle Co. v. Condict*, 795 P.2d 1204, 1211 (Wyo.1990). The fair meaning of any remark made by the trial judge must be interpreted in light of the context in which it was made. *Metz v. Metz*, 2003 WY 3, ¶ 20, 61 P.3d 383, 389 (Wyo.2003).

[¶ 34] In support of their claim that the district court was biased or prejudiced, the Steigers reference the court's inquiry at the scheduling conference as to whether they would have been better off financially simply to have built a permanent foundation than to defend a lawsuit. They further cite the district court's comment at the beginning of trial that "the paperwork presents a very simple case. Covenants exist, the property is encumbered by covenants, there are violations." The Steigers also point to "unsupported assumptions" in the district court's findings that there were aesthetic and safety reasons for the permanent foundation requirement, the lack of a permanent foundation adversely affected property values, the benefits to other homeowners from compliance outweighed the Steigers' cost of compliance, the relative hardship doctrine did not apply and the Steigers were attempting to save money by not constructing a permanent foundation. They also cite the district court's statement in reference to evidence of their refusal to pay Association assessment fees that the Association was "simply trying to get you to be cooperative to pay whatever everybody else was paying, and you elected to quibble about $65 a year." Additionally, they point to the district court's failure to sanction the Association for what they assert were repeated violations of the Wyoming Rules of Civil Procedure, denial of their summary judgment and determination to subject them to trial and award of costs in an amount less than the amount they sought.

[¶ 35] Having reviewed the entire record designated in this case, and the comments of the district court in the context in which they were made, we conclude the Steigers have not shown the district court was biased or prejudiced. That is, they have not shown the district court formed an opinion about the claims without sufficient knowledge or information, or had leanings in favor of the Association and against them. They have not shown the district court's findings were based on grounds other than the evidence before it. While it is clear from the record that the district court was frustrated at times with both parties, it is equally clear that the court went out of its way to allow the parties, and particularly the Steigers, to present their evidence and defend fully against the claim that they violated the covenant.

[¶ 36] The district court's query during the scheduling conference about whether it would have cost less to build the foundation than defend the lawsuit was made in the context of apprising the Steigers of the risk involved in continuing with litigation rather than simply fixing the problem. The district court's comment about the case being a simple one was said in the context of a four volume court file, one completed appeal and the likely prospect of a second appeal. The "unsupported assumptions" were not unsupported but were findings based on evidence presented at trial. The district court's comment about the Steigers' refusal to pay the Association assessment fee was made after evidence was presented that they were the only lot owners in Happy Valley who did not pay the $65 yearly fee which was used for maintaining areas used by all of the members, including the Steigers. Although the district court declined to accept the Steigers' invitation to dismiss the complaint as a sanction for the Association's lack of compliance with court rules, the court discussed with counsel for the Association, as it did with the Steigers, the importance of compliance. With regard to the Steigers' assertion that the district court showed prejudice or bias in holding a trial rather than granting their motion for summary judgment, the issue for our determination at this point is whether the evidence presented at trial supported the ultimate findings. We have concluded it did. Finally, we see nothing in the record supporting a claim that the district court was biased or prejudiced when it awarded the Steigers the costs of appeal. To the contrary, the district court awarded costs in

accordance with W.R.A.P. 10.04[4] even though the Steigers did not file their motion for costs within the time provided in W.R.A.P. 10.06.[5] Although they contend they were entitled to $1,270.00, rather than the $985.00 the district court awarded, they have not shown why they were entitled to the difference.

[¶ 37]   Affirmed.

VOIGT, Justice, specially concurring.

[¶ 38]   I concur in the result reached by the majority, but I write separately because, although I agree with the majority's treatment of the district court's granting of the Association's motion to withdraw the admission, I have a concern with something not even mentioned in the opinion. W.R.A.P. 3.05(b) reads as follows:

(b) Appellant shall, contemporaneously with the filing of its brief in the appellate court and service of that brief upon appellee, serve on appellee, file with the clerk of the trial court a designation for transmission to the appellate court of all parts of the record, without unnecessary duplication, to which appellant intends to direct the particular attention of the appellate court in its brief.

In particular as to transcripts, W.R.A.P. 3.02(b) provides in relevant part as follows:

(b) In all cases other than criminal and juvenile matters, if the proceedings in the trial court were stenographically reported by an official court reporter, appellant shall, contemporaneously with the filing of the notice of appeal, file and serve on appellee a description of the parts of the transcript which appellant intends to include in the record and unless the entire transcript is to be included, a statement of the issues appellant intends to present on appeal. If an appellant intends to assert on appeal that a finding or conclusion is unsupported by the evidence or contrary to the evidence, appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion. . . . At the time of ordering, a party must make arrangements satisfactory to the reporter for payment of the cost of the transcript.

[¶ 39]   We have had occasion to inform appellants what happens when an appropriate record is not made available to this Court:

We begin our discussion of these issues by noting that the appellant has provided neither a transcript of the trial testimony pursuant to W.R.A.P. 3.02 nor a statement of the evidence pursuant to W.R.A.P. 3.03. There also does not appear to have been a request for special findings of fact and conclusions of law under W.R.C.P. 52(a). It is the appellant's burden to bring a complete record to this Court. *Erhart v. Evans*, 2001 WY 79, ¶ 18, 30 P.3d 542, 547 (Wyo.2001); *Wood v. Wood*, 865 P.2d 616, 617 (Wyo.1993). Where a proper record is not provided, an appeal may be dismissed or review may be limited to those issues not requiring inspection of the record. *Stadtfeld v. Stadtfeld*, 920 P.2d 662, 664 (Wyo.1996) (*quoting Matter of Manning's Estate*, 646 P.2d 175, 176 (Wyo.1982)); *Wood*, 865 P.2d at 618.

Without a sufficient record, we must

"accept the 'trial court's findings as being the only basis for deciding the issues which pertain to the evidence.' *Willowbrook Ranch, Inc. v. Nugget Exploration, Inc.*, 896 P.2d 769, 771 (Wyo.1995). 'In the absence of anything to refute them, we will sustain the trial court's findings, and we assume that the evidence presented was sufficient to support those findings.' 896 P.2d at 771–72."

*Williams v. Dietz*, 999 P.2d 642, 645 (Wyo. 2000) (*quoting Weiss v. Pedersen*, 933 P.2d 495, 498 (Wyo.1997), *abrogated on other grounds by White v. Allen*, 2003 WY 39, 65

---

4.   **10.04. Costs on reversal.**
   When a judgment or appealable order is reversed, appellant shall recover costs . . .; and there shall be taxed as part of such costs the cost of making the transcript of the evidence in the case and for typewriting and reproducing briefs, such costs to be computed at the rate allowed by law for making the transcript of such evidence;

5.   **10.06. Time for filing costs and fees.**
   Any motions for costs or fees shall be filed with the court within 15 days after the final written opinion or order is filed.

P.3d 395 (Wyo.2003)). Furthermore, *pro se* litigants are held to the same standards as those represented by counsel. *Dewey v. Dewey,* 2001 WY 107, ¶ 17, 33 P.3d 1143, 1147 (Wyo.2001); *In Interest of KMM,* 957 P.2d 296, 298 (Wyo.1998).

*Smith v. Smith,* 2003 WY 87, ¶ 11, 72 P.3d 1158, 1161 (Wyo.2003). We said much the same thing a bit more recently in *Johnson v. Sikorski,* 2004 WY 137, ¶ 16, 100 P.3d 420, 424 (Wyo.2004):

> Pursuant to W.R.A.P. 3.05(b), Mr. Befumo was required to file a designation "of all parts of the record … to which appellant intends to direct the particular attention of the appellate court in its brief." Although Mr. Befumo quotes portions of the trial transcript in his appellate brief, he did not designate the transcript as part of the record on appeal. As the appellant, Mr. Befumo had the burden of providing this Court with a complete record on which to base a decision. *Orcutt v. Shober Inv., Inc.,* 2003 WY 60, ¶ 9, 69 P.3d 386, ¶ 9 (Wyo.2003). Having no other means to review the district court's decision, we must assume the decision was in accord with the law. *Id.*

(Footnote omitted.)

[¶ 40] In the instant case, the appellants lamented in their Notice of Appeal that they could not afford to pay for a copy of the entire transcript, but noted that they had sent funds to the official court reporter to obtain a copy of the trial testimony of a particular witness. While these statements, coupled with the listing of particular orders and judgments being appealed, might be considered minimal compliance with W.R.A.P. 3.02(b), the appellants clearly violated that rule and W.R.A.P. 3.05(b) when, in filing their Designation of Records for Transmittal on Appeal, they included no portion of the trial transcript. That bears repeating more simply: there is no transcript of the trial evidence in the record.[6]

[¶ 41] This case cannot be distinguished from the cases wherein we have required

appellants to comply with the Rules of Appellate Procedure. Without a trial transcript, there is nothing before us from which we can ascertain that a factual finding of the district court is or is not clearly erroneous. I would summarily affirm for that reason.

HILL, Justice, dissenting, with whom GOLDEN, Justice, joins.

[¶ 42] I dissent because I am convinced the majority fails to rely on the "best evidence" available to the Court, in resolving the only thorny issue in this case. From the outset, the Steigers contended that the Association did not have the legal authority to pursue this action. As is often the case with such associations, it is sometimes difficult to get out "the base" when it comes time to vote. However, the Association only needed 10% of the lot owners in order to constitute a quorum. There were 95 lots, so rounding off (and upward) it took 10 lot owners to constitute a quorum. The best evidence of attendance was the minutes of the critical meeting and those minutes reflected that 13 "persons" were present, not 15, not 20—13. The president of the Association testified that most were couples who represented only a single lot. The president agreed that would not amount to 10 lots, which is the absolute minimum needed to conduct such serious business. Despite "memory" testimony somewhat to the contrary, I believe the Steigers were entitled to rely on the official records of the Association since such records existed, rather than on the vagaries of memory.

[¶ 43] I would reverse and remand this case to the district court with instructions that the complaint be dismissed.

---

**6.** This Court obtained a copy of the transcript directly from the Clerk of District Court. While, on a rare occasion, extreme circumstances may dictate that we obtain something omitted from the record, there is nothing that has been shown about this case that indicates a compelling reason to take that extreme measure.