Leslie H. BERGH, individually and as general partner of Khybur Investments, a Wyoming general partnership, Raymond L. Bergh, individually and as a general partner of Khybur Investments, a Wyoming general partnership; Khybur Investments, a Wyoming general partnership; Douglas B. Petersen; and Milton J. Bergh, Appellants (Defendants),

William T. Tibbits and Robert Tibbits (Defendants),

v.

John W. MILLS and Dianne D. Mills, individually; John W. Mills, as general partner, d/b/a Dunmar Inn; and John W. Mills and Dianne D. Mills, as shareholders, and for the benefit of Billys, Inc., a Wyoming corporation, Appellees (Plaintiffs).

No. 87-188.

Supreme Court of Wyoming.

Oct. 24, 1988.

Roger Cowan of Harris and Morton, Evanston, for appellants.

George S. Andrews of Andrews & Andrews, Evanston, for appellees.

Before CARDINE, C.J., THOMAS and MACY, JJ., and BROWN * and GUTHRIE, JJ., Retired.

CARDINE, Chief Justice.

In this case the trial court, after a bench trial, determined that appellants had defrauded appellees, and entered judgment against appellants in the amount of $286,-656.33. The issues raised on appeal are whether the evidence was sufficient to support the trial court's finding of fraud, whether there was any evidence to support the finding of liability against appellants Raymond Bergh, Milton Bergh, and Khybur Investments, and whether there was a "legal basis" for piercing the corporate veil.

We affirm in part and reverse in part.

## FACTS

The late 1970's and early 1980's were good times in Evanston, Wyoming. Appellant Leslie Bergh and his oil field service corporation, Fluids Control, were making a lot of money. In early 1981, Mr. Bergh and two of his employees, William Tibbits and Douglas Petersen, decided to build an elaborate saloon and dance hall to be known as Billys Country Music Emporium (Billys). They formed a corporation called Billys, Inc., which was capitalized through sales of stock shares to Leslie Bergh, William Tibbits, Bob Tibbits, and Douglas Petersen. Leslie Bergh bought 19,375 shares; William Tibbits bought 14,375 shares; Bob Tibbits bought 9,375 shares; and Douglas Petersen bought 4,375 shares. The stock was paid for almost entirely with promissory notes.[1]

At approximately the same time that Billys, Inc. was being formed, Leslie Bergh and his two brothers, Milton and Raymond, formed a partnership, Khybur Investments, for the sole purpose of acquiring the land and constructing the building for the saloon and dance hall. The partnership borrowed part of the necessary funds from Fluids Control and the remainder from First Wyoming Bank. The partners planned to lease the land and building to Billys, Inc. after construction was completed, and the lease payments would be set at whatever was necessary to cover the loans taken out by Khybur Investments. Necessary equipment for the business was purchased by Fluids Control.

Before the building was completed, it became apparent that additional funds would be needed. In August or September of 1981, Leslie Bergh approached appellee John Mills, his friend and drinking companion, and discussed the possibility of Mr. Mills investing in Billys, Inc. Mr. Mills was a partner in the Dunmar Inn, Evanton's largest motel. A meeting was held in Room 734 of the Dunmar Inn to discuss the terms of the investment. The parties present at the meeting were Leslie Bergh, Douglas Petersen, William Tibbits and Bob

* Retired June 30, 1988, but continued to participate in the decision of the court in this case pursuant to order of the court entered July 1, 1988.

1. Section 17-1-116(b), W.S.1977, provides: "Neither promissory notes nor future services shall constitute payment or part payment, for shares of a corporation."

Tibbits, and appellees John Mills and his wife Dianne.

At the meeting, Leslie Bergh proposed that appellees invest a total of $150,000 in Billys, Inc.—$25,000 would be for the purchase of five percent of the shares of the corporation, and $125,000 as an unsecured loan to the corporation. As part of their presentation, appellants showed appellees a prospectus which projected a net profit of nearly $1,000,000 for Billys, Inc. in its first year. Leslie Bergh alluded to his business acumen and inside knowledge of the Evanston oil patch and assured Mr. Mills he would not let him get hurt on the deal. He said the only reason that he and the other shareholders were making the offer to appellees was that they wanted a local family involved. He also told appellees that they would not be getting such a cheap deal if he and Mr. Mills were not such good friends. What Mr. Bergh and the others failed to tell appellees was that the project was already over budget, that the other investors had "purchased" their stock at a rate which was less than half of the price they were offering to appellees, that they had paid for their stock with promissory notes, and that the corporation was already insolvent.

After the meeting, Leslie Bergh and the other promoters insisted on a commitment from appellees. When appellees finally agreed to the terms of the proposal, an immediate letter of commitment was demanded. Appellees mortgaged their home to obtain the $150,000, and on November 18, 1981, Mr. Mills gave the corporation a $150,000 check in exchange for 2500 shares and a $125,000 promissory note.

Billys opened in December 1981. Shortly thereafter, appellees became aware of the true financial status of the corporation. In order to protect their investment, they arranged to lodge Billys entertainers in the Dunmar Inn on an open account. After one payment, the corporation was in default upon the promissory note to appellees. The business closed in September 1983. By that time the outstanding balance on the open account with the Dunmar Inn amounted to $58,876.74. On March 20, 1985, appellees filed an action to recover the money they invested in the corporation and the amount due on the Dunmar Inn account. After a bench trial, the court found that appellees had been defrauded and entered judgment against appellants Leslie Bergh, Raymond Bergh, Milton Bergh, Khybur Investments and Douglas Petersen.

## FRAUD

Appellants first challenge the sufficiency of the evidence to support the trial court's finding of fraud. We set out the elements of fraud in *Johnson v. Soulis*, Wyo., 542 P.2d 867, 872 (1975), as

> "a false representation by a defendant of material facts which are relied upon by a plaintiff to his damage. *Davis v. Schiess*, Wyo., 417 P.2d 19 (1966)."

Although fraud in the classic sense requires an affirmative misrepresentation, this court has recognized that fraud may be perpetrated by silence as well as by affirmative representations; and when one has a duty to speak, the failure to speak may constitute fraud. *Steadman v. Topham*, 80 Wyo. 63, 338 P.2d 820, 826–27 (1959). Even in the absence of a duty to speak, if a person does speak, he must speak the truth and make a full and fair disclosure, as " 'half the truth may be a lie in effect.' " *Simpson v. Western National Bank of Casper*, Wyo., 497 P.2d 878, 880 (1972) (quoting *Twing v. Schott*, 80 Wyo. 100, 338 P.2d 839 (1959)).

In the present case, the record contains sufficient evidence to support the trial court's finding of fraud by clear and convincing evidence. The promoters of a corporation owe a fiduciary duty to fully disclose material facts to an individual induced to purchase stock in the corporation, including facts concerning the financial structure of the corporation of which the promoters have special knowledge. *Killeen v. Parent*, 23 Wisc.2d 244, 127 N.W.2d 38 (1964). Appellants violated this duty by failing to inform appellees that the other shareholders had paid for their stock with promissory notes and that the corporation was grossly undercapitalized. Appellees

testified that if they had known these facts, they would not have invested in the corporation. In light of the close friendship between John Mills and Leslie Bergh, we cannot say that appellees' reliance was unreasonable. We affirm the trial court's finding of fraud with respect to appellees' investment in the corporation.

## PARTNERSHIP LIABILITY

■ We also affirm the court's extension of liability to Khybur Investments and Raymond and Milton Bergh, Leslie Bergh's brothers and copartners in that partnership. Section 17–13–305, W.S.1977, provides:

"Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act."

Khybur Investments was formed by Leslie Bergh and his two brothers for the sole purpose of purchasing the land and the building for Billys. Leslie Bergh testified that the partnership had no other business interest or purpose. The necessary funds were borrowed, and the real estate was leased to Billys, Inc. for an amount sufficient to cover Khybur Investment's loan payments. When the Dunmar Inn meeting was held, Billys, Inc. needed funds to cover its obligations, which included the lease payments to Khybur. The evidence was sufficient to support an inference that Leslie Bergh was acting for the benefit of the partnership and in the ordinary course of the business of the partnership when he met with appellees at the Dunmar Inn and induced them to invest in Billys, Inc. Consequently, the partnership is liable for the fraud committed by Leslie Bergh at that meeting.

■ Raymond and Milton Bergh, as partners in Khybur Investments, are liable by virtue of § 17–13–307, W.S.1977, which provides:

"(a) All partners are liable:

"(i) Jointly and severally for everything chargeable to the partnership under sections 13 [§ 17–13–305] and 14 [§ 17–13–306]."

The effect of this section of the Uniform Partnership Act is to impose individual liability against the members of a partnership when another partner commits a tortious act within the scope of partnership business. *Phillips v. Cook*, 239 Md. 215, 210 A.2d 743 (1965). Fraud is among the tortious acts included within the scope of this section. *First National Bank of Altoona v. Turchetta*, 407 Pa. 511, 181 A.2d 285 (1962). The trial court did not err in finding Raymond Bergh, Milton Bergh, and Khybur Investments liable for fraud.

## DUNMAR INN ACCOUNT

■ The trial court entered judgment in favor of the Dunmar Inn and against Leslie Bergh, Milton Bergh, Raymond Bergh, Khybur Investments, and Douglas P. Petersen for the amount owing to the Dunmar Inn on its account with Billys, Inc. on the theory that "fraud rendered this entire deal void from the beginning." Appellants argue that the court erred in finding fraud liability in connection with this claim. We agree.

When John and Dianne Mills were defrauded, they were not acting as agents of the Dunmar Inn. When they later convinced the Dunmar Inn to allow Billys, Inc. to run up an open account, they had already become aware of the true financial status of Billys, Inc. The Dunmar Inn's business relationship with Billys, Inc. did not come about through misrepresentation. Instead, it came about through the desire of its partners to try to help out John and Dianne Mills after the fraud had been committed.

■ In the alternative, the Dunmar Inn pursued a contract claim on the open account. While this theory could clearly succeed against Billys, Inc., the shareholders of that corporation cannot be held individually liable unless the corporate identity is disregarded. In our view, the evidence in this case justifies disregard of the corpo-

rate entity. In *AmFac Mechanical Supply Company v. Federer*, Wyo., 645 P.2d 73 (1982), we stated that where a showing of actual fraud is made, that ground alone may be sufficient for piercing the corporate veil. *Id.* at 79. In the present case, appellees demonstrated actual fraud in the capitalization of the corporation. Even though the Dunmar Inn was not defrauded, the evidence supports the trial court's conclusion that it would not have entered and continued its contract with Billys, Inc. in the absence of appellants' fraudulent acts. We will not reward appellants' fraud by allowing them to enjoy the benefits of corporate status. We therefore affirm the trial court's finding of liability against Billys, Inc. and its individual shareholders, Leslie Bergh and Douglas Petersen, on the claim concerning the Dunmar Inn account. We must reverse the court's finding of individual liability against Khybur Investments, Raymond Bergh and Milton Bergh on that claim, however, as those parties were not shareholders in Billys, Inc.

AFFIRMED IN PART AND REVERSED IN PART.