# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 144

OCTOBER TERM, A.D. 2014

*November 7, 2014*

GREENHUNTER ENERGY, INC., a
Texas corporation,

Appellant
(Defendant),

v.

S-14-0036

WESTERN ECOSYSTEMS
TECHNOLOGY, INC., a Wyoming
corporation,

Appellee
(Plaintiff).

*Appeal from the District Court of Platte County*
*The Honorable John C. Brooks, Judge*

*Representing Appellant:*

    Matthew D. Kaufman and J. Zachary Courson of Hathaway & Kunz, P.C., Cheyenne, Wyoming. Argument by Mr. Kaufman.

*Representing Appellee:*

    James R. Salisbury and Anthony M. Reyes of Riske & Salisbury, P.C., Cheyenne, Wyoming. Argument by Mr. Salisbury.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Justice.**

[¶1]    Appellant GreenHunter Energy, Inc. is the sole member of a limited liability company, GreenHunter Wind Energy, LLC (LLC).  It appeals from a district court decision piercing the LLC's veil to hold it liable for the LLC's contractual obligations to Appellee Western Echosystems Technology, Inc. (Western).  We conclude that under the specific circumstances of this case, the evidence supports the use of this extraordinary equitable remedy.  We therefore affirm.

## ISSUES

[¶2]    Appellant presents the following issues, which we have rephrased somewhat:

1.    Did the district court err as a matter of law by applying incorrect factors to determine whether the LLC's veil of limited liability should be pierced?

2.    If the district court consulted the appropriate factors in determining whether to pierce the veil of the LLC, were its factual findings clearly erroneous and misapplied to the law?

## FACTS

[¶3]    In 2009, Appellee Western and the LLC[1] entered into a contract whereby Western undertook to provide the LLC consulting services related to the potential development of a wind turbine farm in Platte County, Wyoming.  While Western performed under the contract, the LLC paid nothing for Western's services.  Western consequently brought a breach of contract action against the LLC and obtained a judgment in the amount of $43,646.10.  *Western Ecosystems Technology, Inc. v. Greenhunter Wind Energy, LLC*, No. 2010-131 (8th Dist., Wyo. 2011).  The district court also granted judgment in favor of Western in the amount of $2,161.84 for attorney's fees incurred in bringing a motion to compel discovery.  The judgments cannot be satisfied because the LLC has no assets upon which Western can execute.

[¶4]    After learning that it could not collect on its judgments against the LLC, Western brought this action against Appellant, the sole member of the LLC, seeking to pierce the LLC's veil and hold Appellant liable for the LLC's contractual obligations.  After discovery was complete and dispositive motions were denied, the case proceeded to a bench trial.[2]

---

[1] The LLC was validly formed in Wyoming.

[2] "We have held that the doctrine of piercing the corporate veil is an equitable one which is particularly within the province of the trial court;" therefore "there exists no right to a jury trial on the issue of piercing the corporate veil."  *Atlas Const. Co. v. Slater*, 746 P.2d 352, 359 (Wyo. 1987) (internal quotation marks omitted).

1

[¶5]    At trial, Western argued that Appellant was the LLC's alter ego and presented evidence, much of it uncontroverted, that it felt proved as much.  Western was able to demonstrate that the LLC is a wholly-owned subsidiary of Appellant, the latter being the sole member and manager of the former.  The LLC consistently carried an operating capital balance which was insufficient to cover its debts, and on numerous occasions its account had a balance of zero.  Western showed that Appellant decided when and how much money to advance to the LLC to allow it to pay its accounts payable.  Therefore Appellant, as the sole source of operating funds for the LLC, decided which of its creditors would be paid.  Although Appellant advanced funds to permit the LLC to pay some creditors, it did not transfer any funds to allow the LLC to pay Western.

[¶6]    Western was also able to show that the LLC did not have employees of its own, but that employees of Appellant performed services for and on behalf of the LLC, including negotiation of wind farm leases and other agreements.  The LLC's chairman and general counsel held the same positions with Appellant.

[¶7]    Western also established that Appellant and the LLC have the same business address.  All bookkeeping and financial management of the LLC were performed by employees of Appellant, including maintenance of accounts receivable and accounts payable for the LLC.  The tax returns of the LLC were consolidated with those of Appellant because the LLC had only a single member, and federal tax law permitted it to be treated as a disregarded entity.  By this means, Appellant was able to deduct $884,092.00 in expenses and claim a loss of $61,047.00 for the LLC's activities on the Platte County wind farm project.

[¶8]    For its part, Appellant presented evidence through its and the LLC's general counsel.  This witness was not personally involved in many of the relevant events, and in the instances in which he was involved, he could not recall much.  Appellant also provided exhibits, such as certain LLC filings with Wyoming's Secretary of State and the LLC's general ledger from 2007 through 2011.  These documents tended to demonstrate that the two entities were detached, and that they maintained separate accounts.

[¶9]    The district court found in favor of Western.  It pierced the LLC's veil and awarded a judgment of $45,807.94 against Appellant for the amount the LLC had not paid under its contract with Western and for the sanctions incurred during the underlying action.

[¶10] Appellant timely perfected this appeal.  Additional evidence from the bench trial, as well as the district court's findings of fact and conclusions of law, will be discussed as necessary below.

## STANDARD OF REVIEW

[¶11]  A district court's conclusions of law are subject to *de novo* review.  *Miner v. Jesse & Grace, LLC,* 2014 WY 17, ¶ 17, 317 P.3d 1124, 1131 (Wyo. 2014).  We review findings of fact to determine if they are clearly erroneous when compared to the record. *Id.*; *see also Windsor Energy Grp., L.L.C. v. Noble Energy, Inc.*, 2014 WY 96, ¶ 9, 330 P.3d 285, 288 (Wyo. 2014).  A finding is clearly erroneous when, although there is evidence to support it, a review of all the evidence leaves us with the definite and firm conviction that a mistake has been made.  *Id.*  Although findings are presumed to be correct, this Court will examine all of the properly admissible evidence in the record, and findings by the trial court are not entitled to the limited review afforded a jury verdict. *Id.*  However, we defer to the district judge to evaluate the credibility of the witnesses, and we do not reweigh disputed evidence.  *Id.*  Findings of fact will not be set aside merely because we would have reached a different result.  *Id.*  Lastly, this Court assumes that the evidence supporting the prevailing party's position below is true, and it gives that party the benefit of every reasonable inference that can fairly and reasonably be drawn from it.  *Id.*

## DISCUSSION

### *Factors to determine whether the LLC's veil of limited liability should be pierced*

[¶12] Certain legally recognized entities, such as corporations and limited liability companies, are separate and distinct from their owners.[3]  *Kaycee Land & Livestock v. Flahive,* 2002 WY 73, ¶ 4, 46 P.3d 323, 325 (Wyo. 2002); Wyo. Stat. Ann. § 17-29-104 (LexisNexis 2013) ("A limited liability company is an entity distinct from its members."). The fundamental feature of these business entities is limited liability, although that protection does not extend to behavior resulting in injustice.  *See Kaycee*, ¶¶ 4-6, 46 P.3d at 325 ("[A] corporation's legal entity will be disregarded whenever the recognition thereof in a particular case will lead to injustice."); Eric Fox, Note, *Piercing the Veil of Limited Liability Companies*, 62 Geo. Wash. L. Rev. 1143, 1145-46 (1994).

---

[3] The notion that individuals may consider banding together to form a distinct entity is not a new concept, as one source explains:

> The idea that people might come together to form a distinct legal entity is as old as recorded history. The Code of Hammurabi (c. 2,083 B.C.) recognized the existence of certain "societies." Drawing on Stoic teachings, the early Romans recognized the existence of collective bodies organized for religious, educational, and governmental purposes. During the Roman Empire, it was decreed that such groups could be formed only by imperial fiat, thus assuring greater governmental control.

114 Am. Jur. 3d *Proof of Facts* 403, § 2 (updated 2014).

[¶13] The common law therefore allowed courts to pierce the veil of limited liability and disregard the putatively separate entity under certain exceptional circumstances. *Kaycee,* ¶ 6, 46 P.3d at 326. Courts have applied or declined to apply this remedy in a manner that has often been confusing and inconsistent, as two luminaries of the legal world observed over a score of years ago: "Piercing seems to happen freakishly. Like lightning, it is rare, severe, and unprincipled." Frank H. Easterbrook & Daniel R. Fischel, *Limited Liability and the Corporation*, 52 U. Chi. L. Rev. 89 (1985) (internal quotation marks omitted).

[¶14] With the advent of different types of business entities, including limited liability companies, the circumstances under which courts may properly pierce the veil have become even more difficult to understand. However, with the benefit of time and experience, this equitable remedy must begin to be applied with greater consistency and more predictability.

[¶15] In order to determine how to approach piercing in this case involving a limited liability company, we begin by studying the development of the law governing business organizations. Early on, the corporation was conceived to assure continuity of existence and to provide a means for shareholders to invest without incurring personal liability which might threaten their private wealth for the acts of the business. *Kaycee,* ¶ 10, 46 P.3d at 327; *see also* 114 Am. Jur. 3d *Proof of Facts* 403, § 1 (updated 2014). The concept of limited liability for corporations stimulated commerce and industrial growth throughout the years, and "[t]his incentive to business investment has been called the most important legal development of the nineteenth century." *Consumer's Co-op. of Walworth Cnty. v. Olsen*, 419 N.W.2d 211, 214 (Wis. 1988) (quoting David H. Barber, *Piercing the Corporate Veil*, 17 Willamette L. Rev. 371, 371-72 (1981)).

[¶16] From the time early statutes controlling corporations were enacted, and continuing today in our own Wyoming Business Corporation Act, corporations have been required to meet many formal requirements as to their structure and governance. *See* Wyo. Comp. Stat. Ann. § 5037 *et seq*. (Mullen 1920); Wyo. Stat. Ann. § 17-16-101 *et seq*. (LexisNexis 2013). The corporation is also burdened by additional taxation because "a corporation is subject to tax on its income, and if the income is distributed to shareholders as dividends, they are also taxed on the income, resulting in double taxation." 14A William M. Fletcher et al., Fletcher Cyc. of the Law of Corp. § 6907.50 (updated 2014).

[¶17] While the limited liability provided by corporations has served an important purpose in the development of our economy, there have been instances when exacting adherence to the concept that shareholders will not be liable for corporate debt led to injustice. *See Caldwell v. Roach*, 44 Wyo. 319, 333-34, 12 P.2d 376, 380-81 (1932). As a result, courts began piercing the corporate veil. We long ago explained "[t]hat the legal entity of a corporation will be disregarded whenever the recognition thereof in a particular case will lead to injustice, has been announced so frequently that it is hardly

4

necessary to cite the authorities." *Id*. As the years passed, we continued to summarize circumstances under which a corporate veil would be pierced pursuant to Wyoming law:

> Before a corporation's acts and obligations can be legally recognized as those of a particular person, and vice versa, it must be made to appear that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

*Ridgerunner, LLC v. Meisinger*, 2013 WY 31, ¶ 14, 297 P.3d 110, 115 (Wyo. 2013) (quotation marks and citations omitted). Over time, we have provided a comprehensive list of factors for courts to consider when they are asked to pierce a corporation's veil. *See id*.

[¶18] Because of the formalities required of corporations, and the tax treatment of their earnings, new types of business entities were conceived. In 1977, Wyoming enacted a statute that allowed the creation of limited liability companies. *Kaycee*, ¶ 8, 46 P.3d at 326; Dale W. Cottam et al., *The 2010 Wyoming Limited Liability Company Act: A Uniform Recipe with Wyoming "Home Cooking,"* 11 Wyo. L. Rev. 49, 51 (2011). Limited liability companies provide the limited personal liability associated with corporations, but they are taxed like a partnership for federal income tax purposes and thus avoid double taxation. *See* Cottam, 11 Wyo. L. Rev. at 51 (explaining that the IRS granted limited liability companies formed pursuant to Wyoming's original act favorable partnership tax status in 1988); s*ee also Lieberman v. Wyoming.com LLC*, 2004 WY 1, ¶ 22, 82 P.3d 274, 283 (Wyo. 2004) (Lehman, J., dissenting); Curtis J. Braukmann, Comment, *Limited Liability Companies*, 39 U. Kan. L. Rev. 967 (1991).

[¶19] A limited liability company's "operation is intended to be much more flexible than a corporation's." *Kaycee*, ¶ 12, 46 P.3d at 328. The original Act, for example, required that a limited liability company be comprised of at least two members, unless the organizer elected "flexible limited liability company" status, which allowed for a single member. *See* Wyo. Stat. Ann. §§ 17-15-106 & 17-15-144(d) (2009) (repealed 2010).

[¶20] Since the Wyoming Legislature passed the original Act, we have had occasion to consider whether and when the veil of a limited liability company may be pierced or disregarded. Over a decade ago, we held that even in the absence of fraud, the veil of a limited liability company can be pierced as that of a corporation can. *Kaycee*, ¶ 1, 46 P.3d at 324. We recognized that piercing of a limited liability company veil was possible

5

under certain circumstances even though Wyo. Stat. Ann. § 17-15-113 (2005) (repealed 2010) stated that "the members of a limited liability company . . . are [not] liable under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company." *Kaycee*, ¶ 6, 46 P.3d at 326. This Court observed, however, that "[c]ertainly, the various factors which would justify piercing an LLC veil would not be identical to the corporate situation for the obvious reason that many of the organizational formalities applicable to corporations do not apply to LLCs." *Id.*, ¶ 12, 46 P.3d at 328; *see also Lieberman v. Mossbrook*, 2009 WY 65, ¶ 56, 208 P.3d 1296, 1312 (Wyo. 2009). This is so because limited liability companies are intended to be much more flexible than a corporation. *Kaycee*, ¶ 12, 46 P.3d at 328; *see also* Cottam, 11 Wyo. L. Rev. at 64 ("[T]he factors for piercing the veil of an LLC would not be identical to those used for a corporate veil piercing because the Original LLC Act intended for LLC's to be more flexible."); Harvey Gelb, *Limited Liability Policy and Veil Piercing*, 9 Wyo. L. Rev. 551, 554 (2009) (explaining that limited liability companies are permitted "to operate with a minimum of formality.").

[¶21] In *Gasstop Two, LLC v. Seatwo, LLC*, this Court further defined the rules which govern whether the veil of a limited liability company may be pierced. 2010 WY 24, ¶ 9, 225 P.3d 1072, 1077 (Wyo. 2010). Drawing upon factors utilized in the corporate context as a starting point, we refined the requirements for piercing the veil of a limited liability company, focusing on four factors: 1) fraud; 2) inadequate capitalization; 3) failure to observe company formalities; and 4) intermingling the business and finances of the company and the member to such an extent that there is no distinction between them. *Id*. *Gasstop* also held that with the exception of fraud, no single factor is sufficient or required to pierce the limited liability company's veil, and that our courts must analyze all of these factors when asked to impose liability on an limited liability company's members. *Id.*, ¶¶ 9-12, 225 P.3d at 1077-79. Applying these factors, we affirmed the district court's refusal to pierce the limited liability company's veil to make its members personally liable under the circumstances of that case. *Id.*, ¶ 1, 225 P.3d at 1074.

[¶22] Five days after our opinion in *Gasstop* was issued, the Governor of the State of Wyoming signed the 2010 Wyoming Limited Liability Company Act into law. *See* Wyo. Stat. Ann. § 17-29-101 *et seq.* (LexisNexis 2013); 2010 Wyo. Sess. Laws, ch. 94. The 2010 Act has been described as "a comprehensive update" to the law governing limited liability companies. Cottam, 11 Wyo. L. Rev. at 52; 2010 Wyo. Sess. Laws 429 (codified as amended). The 2010 Act came about because as the "sophistication and needs of businesses increased, the [original act] became quite outdated after more than three decades." Cottam, 11 Wyo. L. Rev. at 52.

[¶23] The new Act provides limited liability companies with even more flexibility. For example, it eliminated prior provisions dealing with a one-member "flexible limited liability company," and it allowed any limited liability company to simply be formed with a single member. Wyo. Stat. Ann. § 17-29-401. The single member is allowed to

manage the company by statutory design. *See* Wyo. Stat. Ann. § 17-29-102(a)(x), (xi), (xiii); § 17-29-407.

[¶24] The 2010 Act also repealed § 17-15-113 (2009) and recognized that the veil of limited liability companies may be pierced in certain circumstances:

> (a) The debts, obligations or other liabilities of a limited liability company, whether arising in contract, tort or otherwise:
>
> (i) Are solely the debts, obligations or other liabilities of the company; and
>
> (ii) Do not become the debts, obligations or other liabilities of a member or manager solely by reason of the member acting as a member or manager acting as a manager.
>
> *(b) The failure of a limited liability company to observe any particular formalities relating to the exercise of its powers or management of its activities is not a ground for imposing liability on the members or managers for the debts, obligations or other liabilities of the company.*

Wyo. Stat. Ann. § 17-29-304 (emphasis added).

[¶25] The language of § 17-29-304 is clear. *See Aland v. Mead*, 2014 WY 83, ¶ 11, 327 P.3d 752, 758-59 (Wyo. 2014) (setting forth our rules of statutory interpretation). Failure of a limited liability company to adhere to the formalities required of a corporation is not a basis for disregarding the company in an action seeking to pierce its veil. By passing the 2010 Act, the legislature determined that even greater flexibility and informality are acceptable features of a limited liability company. Additional provisions of the 2010 Act confirm that there are relatively few statutorily mandated formalities in order to allow significant freedom and flexibility in the management structure and operation of the company. *See, e.g.*, Wyo. Stat. Ann. §§ 17-29-104, 110, 401, 402 & 407.

[¶26] While the 2010 Act alters the piercing analysis set forth in *Gasstop* to some extent, the essence of the original Act has been preserved, and our holding in *Kaycee* still controls; that is, the new Act continues to allow a limited liability company's veil to be pierced under certain extraordinary circumstances. *See American Action Network, Inc. v. Cater America, LLC*, 983 F.Supp. 2d 112, 124-26 (D. D.C. 2013). We must now determine what test should be applied under the 2010 Act, and what factors may be considered in determining whether to pierce the veil of a limited liability company, which "is an entity distinct from its members." Wyo. Stat. Ann. § 17-29-104(a).

[¶27] After a solicitous study of this Court's precedent, the legislative developments, and authority outside our borders, we conclude that a refinement and restatement of the test set forth in *Gasstop* is in order. The veil of a limited liability company may be pierced under exceptional circumstances when: (1) the limited liability company is not only owned, influenced and governed by its members, but the required separateness has ceased to exist due to misuse of the limited liability company; and (2) the facts are such that an adherence to the fiction of its separate existence would, under the particular circumstances, lead to injustice, fundamental unfairness, or inequity.[4] *See Kaycee*, ¶¶ 4-6, 46 P.3d at 325-26; *see also Wandering Trails, LLC v. Big Bite Excavation, Inc*., 329 P.3d 368, 376 (Idaho 2014); Gelb, 9 Wyo. L. Rev. at 555-56; 114 Am. Jur. 3d *Proof of Facts* 403 (2014); Jeffrey K. Vandervoort, *Piercing the Veil of Limited Liability Companies: The Need for A Better Standard*, 3 DePaul Bus. & Com. L.J. 51 (2004).

[¶28] This test is fact-driven and flexible, and it focuses on whether the limited liability company has been operated as a separate entity as contemplated by statute, or whether the member has instead misused the entity in an inequitable manner to injure the plaintiff. "We have made clear that[] [e]ach case involving the disregard of the separate entity doctrine must be governed by the special facts of that case . . . [and] [t]he district court must complete a fact-intensive inquiry and exercise its equitable powers to determine whether piercing the veil is appropriate under the circumstances presented . . . ." *Kaycee*, ¶ 14, 46 P.3d at 328.

[¶29] In determining whether both prongs of this test have been met, courts can usually apply several factors.[5] The first is whether there has been fraud. *See White v. Shane Edeburn Const., LLC*, 2012 WY 118, ¶ 26, 285 P.3d 949, 957 (Wyo. 2012) (setting forth elements of fraud). We have advised, however, that in certain cases, "[a]lthough fraud in the classic sense requires an affirmative misrepresentation, this court has recognized that fraud may be perpetrated by silence as well as by affirmative representations; and when one has a duty to speak, the failure to speak may constitute fraud." *Bergh v. Mills*, 763 P.2d 214, 216 (Wyo. 1988) (dealing with a promoter who owed a duty to potential investors). We have further explained that "[e]ven in the absence of a duty to speak, if a person does speak, he must speak the truth and make a full and fair disclosure, as half the

---

[4] The first element has undertones of what has been described as the alter-ego test, but we deem it necessary to explain what this element actually means in the limited liability company context. *See Berkey v. Third Avenue Ry. Co*., 155 N.E. 58, 61 (N.Y. 1926) (Justice Benjamin Cardozo explaining that veil-piercing has been "enveloped in the mists of metaphor").

[5] Our research indicates that there is a controversy as to whether to distinguish contract and tort claims in piercing cases and whether to weigh factors differently. Gelb, 9 Wyo. L. Rev. at 565-68; Karin Schwindt, Comment, *Limited Liability Companies: Issues in Member Liability*, 44 UCLA L. Rev. 1541, 1563-65 (1997); *Axtmann v. Chillemi*, 740 N.W.2d 838, 843 (N.D. 2007). We will not address whether the factors set forth in the instant case may be approached differently in a matter involving a tort claim because that question is not presented by this case.

truth may be a lie in effect." *Id.* (quotation marks omitted); *see also Amfac Mech. Supply Co. v. Federer*, 645 P.2d 73, 79-81 (Wyo. 1982) (finding *prima facie* case for piercing established and analyzing fraud as a factor).

[¶30] Constructive fraud may be an alternative to actual fraud in certain circumstances. It "has been defined as consisting of all acts, omissions, and concealments involving breaches of a legal or equitable duty resulting in damage to another, and exists where such conduct, although not actually fraudulent, ought to be so treated when it has the same consequence and legal effects." *Johnson v. Reiger*, 2004 WY 83, ¶ 22, 93 P.3d 992, 998 (Wyo. 2004); *see, e.g., Drilcon, Inc. v. Roil Energy Corp.*, 749 P.2d 1058, 1064 (Mont. 1988) ("We hold that evidence of either actual fraud or constructive fraud may be sufficient to pierce the corporate veil in a given case."); *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013).

[¶31] Second, inadequate capitalization, if there is evidence of it, may be considered. It is important to note, however, that undercapitalization alone will not suffice to pierce the veil. *See Gasstop*, ¶ 11, 225 P.3d at 1078. Basic business practice and societal policy call for a limited liability company to be financially responsible and require that it attempt to arrange for enough capital to reasonably cover its potential liabilities at various points of its existence. *See* Vandervoort, 3 DePaul Bus. & Com. L.J. at 103-04.

[¶32] In determining whether a limited liability company is undercapitalized, courts must compare the amount of capital to the amount of business to be conducted and the obligations which must be satisfied. *Amfac Mech. Supply Co.,* 645 P.2d at 79-81. If the LLC is undercapitalized, or if its members have never attempted to make arrangements to secure sufficient capital, these facts may be evidence that the company was used to screen members from legitimate debt because it is not in reality an autonomous company capable of carrying on its own business. Undercapitalization is a relative concept, and the weight to be given to this factor is dependent on the particular circumstances of the case. Gelb, 9 Wyo. L. Rev. at 559. As one commentator has explained, "[s]ome businesses need a great deal of capital, others very little, and of course there are the in-betweens." *Id.*

[¶33] A third factor to consider is the degree to which the business and finances of the company and the member are intermingled. This factor may have numerous aspects which must be analyzed. Funds and assets should be separated and not commingled. *Gasstop*, ¶ 11, 225 P.3d at 1078. Failure to maintain an arm's-length relationship between the member and company, as by not keeping separate bank accounts and bookkeeping records, may be weighed along with other factors. *See* Schwindt, 44 UCLA L. Rev. at 1562. If the member treats limited liability company property as if it were that person's or company's personal property, a court should consider also this fact. *Id.*; Fox, 62 Geo. Wash. L. Rev. at 1173. Manipulation of assets and liabilities between the

member and company so as to concentrate the assets in the former and the liabilities in the latter can be suggestive of improper use of the LLC as well.

[¶34] This analysis is fact-driven, and the circumstances in a particular case may present additional factors which must be considered. No single category, except fraud, alone justifies a decision to disregard the veil of limited liability; rather, there must be some combination of them, and of course an injustice or unfairness must always be proven.

[¶35] Courts must be mindful of how limited liability companies are commonly operated in Wyoming, as they cannot ignore the realities of the marketplace. Because of the flexibility and decentralized management allowed by this innovative business entity, entrepreneurs find it attractive for small start-ups, and in many cases these legitimately do not require more than a single member with little capital. The limited liability company can be used for a variety of businesses with lawful purposes, from a member whose only assets are herded across the Wyoming prairie to one that is publicly traded and operates around the world. *See* Wyo. Stat. Ann. § 17-29-104(b). Accordingly, the test and factors considered must be attuned to the facts of a given case.

[¶36] With this direction in mind, we turn to Appellant's argument that the district court applied improper factors to pierce the LLC's veil of limited liability. Appellant asserts that the district court "erred by overlooking this Court's direct guidance on [limited liability company] piercing in *Gasstop*, and choosing instead to hand pick inappropriate factors from a laundry list provided as general guidance for corporate piercing in *Ridgerunner* . . . ."

[¶37] After having carefully examined the district court's *Judgment and Order After Trial*, we disagree with Appellant's assessment. The district court made it clear that it was well aware of § 17-29-304, and that in deciding whether to pierce the LLC's veil, it had

> not considered the "failure of a limited liability company to observe any particular formalities relating to the exercise of its powers or management of its activities," pursuant to § 17-29-304(b). In addition, the Court has not found that LLC's [] veil should be pierced "solely by reason of Defendant acting as a member or [] manager" consistent with § 17-29-304(a).

Conforming its analysis accordingly, it considered (1) the LLC's undercapitalization and absence of assets, (2) the LLC's and Appellant's intermingling of finances and business, including commingling of funds and concentration of benefits in the member and liabilities in the LLC, (3) the lack of any separateness between the two, and (4) Appellant's course of conduct in engaging and contracting with Western in the name of the LLC for services when it knew that it could not or would not provide funds to pay

10

Western's bills, which it found to be fraudulent and not protected by the veil of limited liability.[6]

[¶38] We are satisfied that the district court applied the correct law as set forth above. *See* ¶¶ 27-35, *supra*. While it cited *Ridgerunner*, which involved a corporation, it did so only to draw upon general propositions of law relating to piercing the veils of business organizations, and it conformed its analysis to *Gasstop* and the 2010 Act. Although it did not have the guidance this opinion offers, the district court considered appropriate factors and did not err as a matter of law.

### Evidence supporting piercing the LLC's veil

[¶39] It bears repeating that limited liability is the rule, and piercing is the rare exception to be applied only in cases involving exceptional circumstances. *See e.g.*, *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S.Ct. 1655, 1661, 155 L.Ed.2d 643 (2003) (advising that piercing "is the rare exception, applied in the case of fraud or certain other exceptional circumstances . . . and usually determined on a case-by-case basis"). This is one of those rare situations, although we must concede that it is a close call.

#### *Undercapitalization*

[¶40] Appellant first complains that the weight the district court gave to undercapitalization contradicts our direction in *Gasstop*, and that its findings are not supported by the evidence. We disagree. The district court did not rely solely on undercapitalization to determine that piercing the veil was warranted. *See* ¶ 37, *supra*. Rather, undercapitalization was one of several factors it considered in the totality of the circumstances of this case, as was done in *Gasstop*. *See Gasstop*, ¶ 11, 225 P.3d at 1077-78. ("[u]ndercapitalization was not the only pertinent factor to be considered in piercing" the veil of limited liability). Furthermore, the evidence supports the district court's findings that:

> In early 2009, LLC and [Western] entered into a Professional Services Contract, wherein [Western] contracted to provide consulting services to LLC relating to a wind energy project in Platte County, Wyoming . . . . On June 8, 2009 [Western] submitted Invoice # 28355 to LLC in the amount of $5,022.85. As of June 9, 2009, LLC did not have any funds within its operating account. [Western] submitted

---

[6] Appellant asserts a "factor" that should not have been considered was its tax filings. Appellant's argument is misplaced. Our review of the district court's judgment indicates that the tax filings were considered as evidence in its analysis of the aforementioned factors. Therefore, whether it was appropriate for the district court to consider such evidence will be addressed *infra* as part of Appellant's second issue raised on appeal.

> subsequent invoices to LLC, which went unpaid. During the periods when these invoices were submitted to LLC, LLC often had $0.00 balances in its operating account and received periodic money transfers from [Appellant]. [Appellant] has at all times maintained the sole discretion to decide when funds would be transferred to LLC, to decide the amount of money that would be transferred to LLC, and to decide which bills of LLC would be paid with transferred monies. When [Appellant] stopped providing money transfers to LLC, LLC became insolvent and was unable to pay creditors, including [Western].

[¶41] Our review of the record confirms the accuracy of the district court's finding that during the periods when Western's invoices were submitted to the LLC, it often had no money in its operating account, and that it received periodic money transfers from Appellant, which decided how much money would be transferred to the LLC to pay specific bills it decided to pay, and when.

- In March 2009, the LLC and Western entered into their contract. From that point on until Western submitted its first invoice in June 2009, Appellant made several capital contributions ranging from $100.00 to $37,000.00 in order to pay the LLC's debts. The LLC's account balance beginning in March 2009 was $4,880.08, and it fluctuated down to zero during this timeframe.

- On June 8, 2009, Western submitted its first invoice for services rendered in the amount of $5,022.85. On the same day, Appellant transferred $3,474.78 from its operating account to the LLC's operating account to pay some of the LLC's accounts payable. However, the LLC did not pay any part of Western's invoice.

- As of June 9, 2009, the balance of the LLC's operating account was $0.00. From June 19, 2009 through the end of July 2009, Appellant transferred approximately $13,000.00 from its operating account to the LLC's operating account to cover payment of the LLC's accounts payable, but none of this money went to Western.

- On August 31, 2009, Western submitted a second invoice for services rendered in the amount of $14,916.51. As of that date, the balance of the LLC's operating account was again $0.00.

- On September 5, 2009, Appellant transferred $1,080.05 from its operating account to the LLC's operating account to pay some of the LLC's accounts payable. It transferred another $1,317.74 on September 21, 2009 to the LLC's operating account to pay the LLC's Capital One VISA credit card bill. However, as of September 20, 2009, the balance of the LLC's operating account was $0.00, and

none of the funds Appellant provided were used to pay any part of Western's increasing bill.

- On November 6, 2009, Western submitted a third invoice for services rendered in the amount of $7,175.82. As of November 11, 2009, the balance of the LLC's operating account was again $0.00. On November 23, 2009, Appellant transferred $4,978.86 to the LLC's operating account to cover the payment of some of the LLC's accounts payable. Once again, however, LLC did not pay any part of what it owed on the three invoices submitted by Western.

- On December 17, 2009, Western submitted a fourth invoice for services rendered in the amount of $4,395.96. On January 8, 2010, Appellant transferred funds to the LLC's operating account in the amount of $4,172.11, none of which was used to pay for the outstanding invoices submitted by Western.

- Western submitted three more invoices on March 8, June 1, and July 1 of 2010 for additional services performed, in the respective amounts of $1,748.11, $4,168.80, and $427.50. As was the case with previous invoices, the LLC never paid anything on them.

[¶42] Based upon these facts, and other evidence introduced at trial, the district court correctly concluded that Appellant "failed to adequately capitalize LLC, that LLC was undercapitalized at all times relevant to this suit, and that LLC lacks corporate assets."

[¶43] Appellant correctly points out that start-up companies, new business ventures, and early stage companies sometimes may not have initial capital or income sufficient to cover their expenses, and that they do in fact require periodic capital infusions from members to meet their financial obligations. However, in this case, the evidence supports the district court's finding that the LLC had inadequate capital due to manipulation by its member, a publicly traded corporation, and that Appellant used its position to control "the amount of money that would be transferred to LLC, and to decide which bills of LLC would be paid with transferred monies." Put another way, the LLC was continually undercapitalized by choice, not by external forces such as those found in *Gasstop*. *See Gasstop,* ¶ 11, 225 P.3d at 1077 ("At no time did the testimony purport to show that the lack of capital was a reason for the failure of the business or the inability to pay rent.").

### *Intermingling of business and finances*

[¶44] Appellant also asserts that the district court misunderstood the factor of intermingling business and finances between it and the LLC, and the court therefore misapplied the law to the evidence. It contends the district court should have focused solely on "whether or not Appellant and the LLC maintained separate accounting, bank

accounts, accounts payable, accounts receivable, and could clearly demonstrate such distinction."

[¶45] Appellant and the LLC did maintain separate bank accounts and business records. If the analysis could end there, Appellant would have a convincing case. However, Appellant's argument ignores other facets of this factor which must be considered, as we explained above. *See* ¶ 33. In actions seeking to pierce the veil of a limited liability company, each case must be governed by its own facts. *See Miles v. CEC Homes, Inc.*, 753 P.2d 1021, 1023 (Wyo. 1988). There is no rigid formula to which a court's analysis must conform; instead, each case requires a fact-intensive inquiry that must address the particular circumstances. Here, based upon the evidence presented at trial, the district court found the following with respect to intermingling:[7]

- The overlap between the LLC's and Appellant's ownership, membership and management was considerable and to an extent such that, when considered with other factors, piercing was appropriate. Appellant and the LLC utilized Appellant's accounting department, and in fact the same accountants managed the finances of both entities. They had the same business address and creditors of the LLC mailed their invoice to Appellant's address for processing. The LLC's tax returns were consolidated with the tax returns of Appellant.

- The LLC did not have any employees who were independent of Appellant; rather, all of the LLC's functions were carried out by employees of Appellant. Employees of Appellant negotiated and entered into contracts on behalf of the LLC, and these same individuals decided which of the LLC's creditors to pay through contributions from Appellant.

- Appellant assigned its own employees to perform work of the LLC, and although Appellant "charged" the LLC for the labor performed by Appellant's personnel, Appellant directly paid its employees for that work.

- The LLC had no revenue separate from Appellant. Funds were commingled in the sense that the LLC's bills that Appellant wanted paid were settled with Appellant's funds which were "passed through" the LLC by periodic transfers. A particular bill was paid only if and when when Appellant decided to transfer funds to pay it.

---

[7] The district court broke down the intermingling factor in its *Judgment & Order* into several subsections: commingling of funds; identical ownership, membership and ownership; aligned business activities and purpose; and concentration of benefits in Appellant and liabilities in the LLC. However, these subsections all fall under the intermingling factor, which we address accordingly.

- The LLC entered into an agreement with Western to procure services for the purpose of supporting and benefitting Appellant's business. Appellant claimed a deduction in the amount of $884,092.00 attributable to the Platte County wind energy project and a loss on its corporate tax return in the amount of $61,047.00 attributable to the same project on its 2009 tax return.

- Appellant manipulated the assets and liabilities in a manner such that Appellant improperly reaped all of the rewards and benefits of the LLC's activities, while simultaneously saddling the LLC with all of its losses and liabilities, including the unpaid bills for services rendered by Western. Appellant has enjoyed significant tax breaks attributable to the LLC's losses, without bearing any responsibility for the LLC's debt and obligations that contributed to such losses. Such a disparity in the risks and rewards resulting from this manipulation would lead to injustice.

[¶46] Based upon this, and other evidence in the record, the LLC was not only owned, influenced and governed by Appellant, but the entities had ceased to be separate due to Appellant's misuse of the LLC. Furthermore, the facts are such that adherence to the fiction of the LLC's separate existence would, under these particular circumstances, lead to an unjust and inequitable result. We conclude that the district court's findings of fact were not clearly erroneous and did not otherwise err in applying those findings to the law.

[¶47] However, Appellant makes several reasonable observations which temper these findings as they relate to a single-member limited liability company. The first involves the district court's consideration of federal tax filings. Appellant properly points out that as a single-member limited liability company, the LLC can properly be taxed as a disregarded entity. *See* 26 C.F.R. § 301.7701-3(a), (b); *see also* § 301.7701-2(a). Federal tax law allows the LLC's losses to be attributed to Appellant and a consolidated tax return filed. As one commentator explains:

> With the advent of check-the-box, the tax treatment of single-member LLCs injects a new concept of "disregarded entity." A trend, however, is not to treat the LLC as disregarded for all purposes. A single-member LLC is a "disregarded entity." The term "disregarded entity" is defined by IRC §7701 and the regulations thereunder as any single-member entity that is not a corporation. The owner of a single-member entity can be a natural person or any other entity including a corporation.
>
> Natural persons who own single-member LLCs [disregarded entities] do not file any federal income tax forms for the entity. The disregarded entity owner reports the profits and losses of the company on the individual's personal

15

Schedule C on the 1040 form. Single-member LLCs whose owners are corporations are treated as divisions of the corporate owner and the profits and losses are reflected on the corporate owner's returns. . . .

Phillip L. Jelsma & Pamela Everett Nollkamper, *The Limited Liability Company*, § 12:100 at 12-7 (3d ed., revised 2013) (alteration in original).[8]

[¶48] For that reason, while consideration of Appellant's consolidated tax return and the losses of the LLC reported therein may have been relevant to the district court's piercing analysis, the amount of weight given to this evidence must be balanced by the fact that this practice is permitted under our nation's tax laws. Stated differently, courts should not create a scenario in which a single-member limited liability company would be confronted with a catch 22: either follow federal tax law and risk losing limited liability, or forego advantages available under federal tax law to assure limited liability. The district court's ruling does not create that dilemma. Instead, it considered Appellant's tax filings as only one of many relevant pieces of evidence demonstrating that Appellant directed benefits from the LLC to itself, while at the same time it concentrated wind farm

---

[8] The IRS provides guidance on this issue as well:

> An LLC is an entity created by state statute. Depending on elections made by the LLC and the number of members, the IRS will treat an LLC either as a corporation, partnership, or as part of the owner's tax return (a ["]disregarded entity"). Specifically, a domestic LLC with at least two members is classified as a partnership for federal income tax purposes unless it files Form 8832 and affirmatively elects to be treated as a corporation. And an LLC with only one member is treated as an entity disregarded as separate from its owner for income tax purposes (but as a separate entity for purposes of employment tax and certain excise taxes), unless it files Form 8832 and affirmatively elects to be treated as a corporation.
>
> **Owner of Single-Member LLC**
>
> If a single-member LLC does not elect to be treated as a corporation, the LLC is a "disregarded entity," and the LLC's activities should be reflected on its owner's federal tax return.
>
> . . .
>
> If the single-member LLC is owned by a corporation or partnership, the LLC should be reflected on its owner's federal tax return as a division of the corporation or partnership.

IRS, *Single Member Limited Liability Companies*, available at http://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Single-Member-Limited-Liability-Companies (last visited Nov. 2014).

project debts it decided would not to be paid in the LLC. The district court did not err in doing so.

[¶49] Appellant also raises a reasonable policy concern regarding the operational and management structure of a single-member limited liability company. A single-member company is owned and by default often managed by its sole member as expressly permitted by the 2010 Act. Wyo. Stat. Ann. §§ 17-29-407 ("[a] limited liability company is a member-managed limited liability company unless the articles of organization or the operating agreement" state otherwise). Because of the minimal requirements for creating and operating a single-member limited liability company, this form of business organization can be utilized by many different types of members, from an individual starting a business out of her home to a large corporation. Wyo. Stat. Ann. §§ 17-29-102(xi-xiii), 104, & 401. The flexibility allowed in the operation of such an entity does not conflict with the use of a home address as the business's address in some cases. Nor is it inconceivable that the sole member may manage the company's finances as well as its own or be responsible for entering into agreements on the company's behalf. Indeed, that will likely be the case when the sole member manages the company. While the district court noted that the LLC's address was the same as Appellant's and that all finances and negotiations were handled by the latter, under the circumstances of this case, it did not assign inappropriate weight to this evidence in its overall analysis.

[¶50] Finally, Appellant argues that Western should have protected itself by requiring Appellant to guarantee the LLC's obligation or require a retainer. As a matter of policy, Appellant posits, Western "was doing work at its own risk" by not taking "any commercially reasonable and available method to protect itself." While it may be true, as Appellant suggests, that it is commonplace for lenders to seek personal guarantees from limited liability companies, other contract creditors that are not in such an advantageous position to insist on such guarantees or other protections should not be left holding the bag due to a member's misuse of the limited liability company. As one authority explains:

> [I]n the vast universe of contract piercing cases, there are probably relatively few where it would be practical or sensible for contract creditors to obtain personal guarantees or other contract protections. Those contract creditors who are in a position to do so, like banks, may obtain personal guarantees and/or security from privately held businesses as a matter of course. But the vast majority of contract creditors or potential contract creditors, such as wage earners, consumers, trade creditors and small suppliers, have probably been in no position competitively or economically to insist on guarantees or other protections or to incur the expenses of investigating whether they should be seeking such protections. These

17

> contract creditors should not lose the opportunity to pierce
> corporate veils or be disadvantaged in their efforts to do so
> simply because they are classified as contract creditors.

Gelb, 9 Wyo. L. Rev. at 566.

[¶51] It makes good business sense for a contract creditor to try to obtain a guarantee from the member or retainer from the limited liability company itself. But we are mindful of the reality of the marketplace that many businesses are not in a position—competitively or economically—to insist on guarantees. For that reason, we decline Appellant's invitation to find piercing inappropriate in this case because Western did not protect itself from Appellant's misuse of the LLC by attempting to obtain a guarantee or other form of security. To do so would invite abuse of entities, as is the case here.

### *Fraud*

[¶52] We have made it clear that a showing of fraud or an intent to defraud is not necessary to disregard the legal fiction of a separate entity. *Kaycee*, ¶ 14, 46 P.3d at 328. Our analysis could therefore stop here. However, the district court also found that Appellant's "course of conduct, which was executed in the name of the LLC, wherein it engaged and contracted with [Western] for valuable services knowing that it could not or would not pay [Western's] bill when received, constitutes a fraud that should not enjoy protection" behind the veil of limited liability. It reasoned that the instant case was "a far cry from cases such as that in *Gasstop*, where a claim of fraud was found to be inappropriate where the evidence showed that the [limited liability company] was not intentionally made insolvent to serve as a 'judgment-proof shell' that allowed the owner to avoid liabilities, but rather became insolvent due to an unforeseen and undesired economic recession."

[¶53] While not a prerequisite for piercing a limited liability company's veil, fraud can be a powerful reason to do so. *Amfac Mech. Supply Co.*, 645 P.2d at 79. "It is in the public interest to disregard the legal fiction of a separate entity, whether that be a corporation or LLC, when those benefiting from that fiction commit fraudulent conduct." Vandervoort, 3 DePaul Bus. & Com. L.J. at 74.

[¶54] Appellant argues, *inter alia*, that Western failed to present any evidence of fraud, or the intention by Appellant to commit any fraud, and the district court erred by inferring fraud from the facts of the case. We agree with Appellant on this point.

[¶55] The elements of fraud have been clearly set forth by this Court, and we have explained that the facts supporting those elements must be alleged clearly and distinctly, and proven by clear and convincing evidence.

The elements of a claim for relief for fraud are a false representation made by the defendant which is relied upon by the plaintiff to his damage, the asserted false representation must be made to induce action, and the plaintiff must reasonably believe the representation to be true. A plaintiff who alleges fraud must do so clearly and distinctly, and fraud will not be imputed to any party when the facts and circumstances out of which it is alleged to arise are consistent with honesty and purity of intention. Fraud must be established by clear, unequivocal and convincing evidence, and will never be presumed.

*White*, ¶ 26, 285 P.3d at 957 (quotation marks omitted).

[¶56] There is no evidence that Appellant made false statements that Western relied upon in entering into the contract with the LLC or in continuing to perform services thereunder. There is likewise no evidence that Appellant's employees made statements which were only partially truthful and therefore fraudulent. *Bergh*, 763 P.2d at 216. Finally, there is no evidence that either the LLC or Appellant assumed and violated any fiduciary duties which might support a claim of constructive fraud. *Johnson*, ¶ 22, 93 P.3d at 998-99. The parties simply entered into an agreement that Western trusted would be performed by the LLC, and it was not.

[¶57] However, we believe the district court instinctively applied the test we have set forth above, although it used the term "fraud." It found that Appellant misused the LLC in order to improperly manipulate the situation to avoid paying for services which benefitted it, that it failed to maintain adequate separation, and that to allow it to do so would be unjust and inequitable. Thus, even though there was no fraud in the classic and technical sense, the district court's decision to pierce the LLC's veil to hold Appellant responsible for a debt for services which benefitted it was legally correct and not clearly erroneous.

## CONCLUSION

[¶58] We conclude that the district court correctly applied the applicable law and that its findings of fact were not clearly erroneous. Based upon the totality of the circumstances, the evidence supports the determination that the LLC was not only owned, influenced and governed by Appellant, but that the LLC had ceased to be a separate entity due to Appellant's misuse of it in this transaction. Adherence to the fiction of the LLC's separate existence would, under these particular circumstances, lead to an unjust and inequitable result. Accordingly, we affirm the district court's judgment piercing the LLC's veil and imposing liability on Appellant for its debt to Western.